## Hill v. Hill.

(Decided June 19, 1931.)

HARRY DAVIS, Jr., for appellant.

GORDON, LAURENT & OGDEN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—
Reversing.

The parties to this action are husband and wife. They were married in the state of Mississippi, in 1911, and lived an extremely happy life in affectionate association with each other until some time in 1928, when they moved from Mississippi to Louisville, Ky., where the husband, who is the appellee, David Luther Hill (and was the defendant below), continued to practice his profession of medicine in which he was engaged before and

throughout his married life. For more than a year after locating in Louisville the same esteem and affection for each other that had theretofore existed between the parties continued.

A female secretary, whom defendant had employed in his office, proved to be the rock upon which the smooth running matrimonial bark in which these parties were sailing up to that time, was wrecked. The secretary, either intentionally or unintentionally, absorbed both the affections and the attentions of the doctor and soon converted him, from the loving and attentive husband that he had always theretofore been, into a morose, sour, silent, surly, and cruel one toward his faithful wife, the plaintiff and appellant, Reynolds Davis Hill; but the parties continued to live in their former residence until July 24, 1929, when the final separation occurred.

In January, 1930, the wife filed her action against her husband in the Jefferson circuit court for a divorce upon the ground of continued cruelty towards her for a period of six months or more; but on that hearing she was denied an absolute divorce because the ground relied on therefor, though proven, was not continued for the requisite length of time, which, according to the learned counsel for plaintiff, was for a space of only five months and twenty-three days, when the statute requires that such conduct and behavior of the husband shall continue "for not less than six months." However, the court granted plaintiff in that case a divorce from bed and board, and which was the status of the relationship between the parties at the time this second action for an absolute divorce was filed by plaintiff against defendant, in the same court, on August 27, 1930, and the ground therein alleged was one year's continuous abandonment of her by her husband without her fault. No defense was made to the last divorce proceeding filed by plaintiff, and the testimony heard upon the final submission of that case consisted only of that given by plaintiff herself, and other sustaining witnesses, whom she introduced, the defendant not testifying himself, even if he was a competent witness, nor did he introduce any witness to refute the proof that plaintiff submitted.

Briefly stated, the uncontradicted testimony established the facts as we have hereinbefore, in general terms, stated them. It was given by plaintiff (her testimony not having been objected to) and members of her

family who were familiar with the facts. It proved that, continuously throughout the married life of the parties up to the time of the manifested change in the husband's attitude, no couple lived more happily or contentedly together in their married associations than did the parties to this litigation. Defendant was, throughout that period, kind, attentive, affectionate, and considerate towards his wife, and was never happier than when he was doing something for her enjoyment and pleasure. He gave to her a pet name, and scarcely ever addressed or spoke of her except by that name. He would take her with him on visits to his patients, and their acquaintances and associates universally regarded them as a model married couple; and that attitude was shown to be undoubtedly genuine as to both of them.

The removal to Louisville made no change in the conduct of the one toward the other until the unfortunate advent of the secretary. After that wrecking rock made its appearance the husband began to assume a callous and cool attitude toward his wife, which rapidly increased, until he would go for days without speaking to her or scarcely noticing her. In the meantime he began to be out late of nights, on evident missions not connected with the practice of his profession, and the telephone in the home of the parties was doubly worked in carrying affectionate messages to and from the husband and his secretary, and which grew to such an extent as to become not only a physical disturbance in the household, but a larger mentally disturbing one to plaintiff before whom it was unblushingly engaged in by her husband.

Some time near the 1st of May, 1929, plaintiff sprained her ankle and was carried to a hospital. Defendant manifested no concern or anxiety about his wife's condition and seldom went to the hospital in which she was confined, and at no time visited the ward occupied by her. She finally recovered sufficiently to return to her home, but by that time the husband had become so alienated from her that he frequently cursed in her presence and acted on some occasions like he was mentally mad, and at one time threatened to or did strike plaintiff.

On the evening of July 23, 1929, defendant told his wife that he hated her and was going to leave her, and which he intended to do that night. At the same time

he instructed her that he would be back the next day for his clothing, and on the next morning he telephoned to his home that he would appear there later in the day to ·obtain his wardrobe, which he did on the late afternoon of that day. However, before he returned to the residence for that purpose, plaintiff left (there being no other member of the family, the parties never having had children born to them), and went to the home of her father, who was residing in Louisville. In narrating, in her testimony, the circumstances under which she left their residence, she was asked and answered these questions:

"Q. When did you separate? A. The 24th day of July, 1929.

"Q. How did that come about? A. He merely stated that he was going to leave and I packed his things for him and then I went home myself.

"Q. Why did you go? A. I went home because he said he was going to leave and I left him first.

"Q. How long had it been prior to that time since he had spoken to you? A. Not for several weeks. He would call on the telephone and ask for the maid instead of me."

That testimony, as so briefly outlined, was given by plaintiff and substantially corroborated by the housemaid, and by plaintiff's father, who was frequently at the home of the parties and in their presence at other places. Not a word is to be found in the entire record attaching any blame whatever to plaintiff. On the contrary, it uncontradictedly appears that she continued up to the time of the separation to be the true, loyal, faithful and affectionate wife that she had always been throughout the marriage, and which exhibits great patience and endurance on her part. The learned chancellor who rendered the judgment appealed from in his opinion quoted the testimony of the wife above inserted, and then concluded that, inasmuch as she stated that "I left him first," she abandoned him and not that he abandoned her, for which reason the separation of the parties could not be considered as without plaintiff's fault. But, in arriving at that conclusion we think the learned chancellor, for whose opinions we entertain the highest respect, misconstrued the law and did not properly interpret the scope and meaning of the word "abandonment" as employed in our divorce statutes. The general

rule upon the subject is thus stated in the text in 19 C. J. 61, secs. 116, 117:

> "The spouse who by his or her act intentionally brings the cohabitation to an end is guilty of desertion. Hence, where a spouse intentionally brings the cohabitation to an end by misconduct which renders the continuance of the marital relations so unbearable that the other leaves the family home, the former, and not the latter, is the deserter. It has been held that it is not necessary that the guilty party should entertain, in connection with the misconduct, any settled purpose to drive the other away, but it is enough if such is the natural consequence of the acts."

To the same effect is the text of Mr. Bishop in his "Marriage, Separation and Divorce," volume 1, 709, wherein he says: "It is immaterial which of the married parties leaves the matrimonial home; the one who intends bringing the cohabitation to an end commits the desertion." Substantially to the same effect are the domestic cases of Broyles v. Broyles, 106 S. W. 212, 32 Ky. Law Rep. 445; Mayes v. Mayes (Ky.) 115 S. W. 717 (not elsewhere reported); Johnson v. Johnson, 145 Ky. 488, 140 S. W. 656; Manning v. Manning, 188 Ky. 140, 221 S. W. 522; Steele v. Steele, 96 Ky. 382, 29 S. W. 17, 16 Ky. Law Rep. 517; and Watkins v. Watkins, 202 Ky. 141, 259 S. W. 20. Pages of texts and opinions, both domestic and foreign, could be cited to the same effect, but those given are sufficient to point out clearly the general rule. It is based upon the sound theory that the deserter is the one who by his words, conduct, demeanor, and attitude produces the intolerable conditions which force the other spouse to withdraw from the joint habitation to a more peaceful and less disturbing one, and that under such circumstances the one withdrawing may not be charged with deserting or abandoning the other, but that on the contrary, the one who produced such intolerable conditions should be charged with the first intention to disrupt the marital relation and to permanently destroy it, and if such conduct is of the nature calculated to cause the other spouse to be the first one to depart from the mutual home, the blame should rest on the producer of such conditions, and not upon the one who so departed by reason thereof.

Here, as we have seen, no riffle occurred upon the smooth matrimonial sea because of any conduct of plaintiff, but only from that of defendant. The former, as much as possible, continued thereafter to maintain her former wifely attitude toward her husband, until at last, he informed her that he hated her, and that he expected to abandon the home that night or the next day, which he did. In doing so he left her alone and still suffering from her unrecovered condition resulting from her sprained ankle. If there was ever a case where the above doctrine should be applied, it is certainly this one, even if the cause should be determined from the standpoint that plaintiff was the first one of the two to leave their mutual home.

But, we are not convinced from the testimony that she was the first one to do so. Before she departed from their residence, as so stated by her, and as so proven by the maid, defendant had already taken his departure therefrom, and the fact that he contemplated returning thereto later in the day to procure his clothing did not destroy the effectiveness of his prior abandonment. The only case cited by the learned chancellor in support of his opinion is that of Sales v. Sales, 222 Ky. 175, 300 S. W. 354. But, clearly that opinion is not applicable to the facts of this case. There, the husband was attempting to justify his abandonment because of prior cruelty of his wife, producing such intolerable conditions in the home as to justify his fleeing therefrom. His contention in that case was denied upon the ground that the statute did not make the cruelty of a wife a cause for divorce to the husband, and that her cruelty, though of the nature if persisted in for the requisite length of time to produce grounds for granting a divorce to the wife because of such conduct on the part of the husband, would not justify the husband in deserting the home and abandoning the wife. The situation is exactly the reverse when the conduct of the susband is such as to make it cruelty toward the wife and to furnish her grounds for divorce if persisted in for as much as six months.

The testimony in this case, in addition to what we have said, shows that plaintiff continued to keep her home open for more than thirty days after the separation occurred in the manner we have stated, in the hope that defendant would relent and reform and return thereto, where he would be received by her with open

arms with the view of restoring former happy conditions.

For the reasons stated, the judgment is reversed, with directions to set it aside and to grant the plaintiff an absolute divorce from defendant as prayed for in her petition.