## Craig v. Craig.

(Decided Nov. 25, 1932.)

WAUGH & HOWERTON for appellant.

R. S. DINKLE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming on Appeal and Reversing on Cross Appeal.

The parties to this action are husband and wife. We will refer to them in this opinion by the positions they occupied in the court below, i. e., as plaintiff and defendant. They were married on May 20, 1929 (when they were seventeen and nineteen years of age, respectively), and lived together until October 16 of the same year when they separated, and after the elapse of more than a year from that date the appellant, husband, who was plaintiff below, filed this action in the Boyd circuit court against the appellee, his wife, who was the defendant below, to obtain a divorce from her upon the ground that she abandoned him without his fault and which had continued for more than one year. In her answer to the petition, she denied the abandonment charged to her in that pleading as being without plaintiff's fault, and counterclaimed by seeking a divorce from him upon another ground stated in the statute, but which was not available, even if true, because not continued for the statutory length of time.

Later she amended her answer and relied upon the same ground that her husband did in his petition, and in which pleading he also sought the custody of an infant male child that was born after the separation, and which was about nine months old when the testimony in the case was taken. Following pleadings made the issues and upon submission the court upon the proof filed dismissed both the petition of the plaintiff and the cross-petition, or counterclaim, of the defendant, and from which both of them prayed and were granted an appeal to this court.

Plaintiff procured the record, and filed it in this court, and defendant has since obtained a cross-appeal.

The testimony as given by the witnesses (some of whom were incompetent but no objection was taken) is meager upon many crucial and material points. From what we glean from occasional expressions, especially as contained in plaintiff's testimony, it is clear that the true motive actuating each of this young married couple in breaking up their marital relationship was but dimly depicted. The husband had a job with a railroad company, which kept him away from home throughout the day and frequently for as much as a week at a time. They first took up their abode with a Mrs. Brown occupying some rooms in her house as an apartment. Before the separation they occupied other apartments at two other places. Defendant testified that plaintiff drank to excess and sometimes threatened her, and at one time he struck her and bruised her body. The parents of the two lived in the same neighborhood on property of their own, and defendant was very much attached to her parents and their home; and, especially when plaintiff was detained at his work, she would visit that home, and it is clearly to be gathered that he, not only greatly disliked her mother, but also took exceptions to the extent or number of his wife's visits to her parents' home. Defendant ventured, at least on one occasion, to suggest that they take up their abode with her parents, which not only met with vehement opposition on the part of plaintiff, but, according to the testimony of defendant (and which plaintiff did not deny), he then and there abused his mother-in-law in scathing and blasphemous terms.

However, defendant continued thereafter to live with him; but, as she testified (and which was also not denied in terms by plaintiff), on the evening of October 15 plaintiff told her that he was tired of married life and peremptorily requested her to go home to her parents, since he did not intend to live with her any longer; that she thereupon packed her clothing in a cedar chest which had been given to her by some one, and she packed her husband's clothes in a grip, or suitcase; and that the next morning her husband left for his work; but before doing so he arranged for a Mr. Fowler, who was engaged in the transfer business, to carry his wife's clothes and other trinkets to her mother, and his to his mother, which Fowler did, and he was paid for his services by plaintiff. Both parties to this litigation and Fowler testified to the latter facts.

During the separation, and before the filing of this action, plaintiff visited his wife at her mother's home only twice, and, according to his own testimony, he provided her with only "a coat and a dress" and some shoes. When asked why he had not contributed more to her clothing and comfort, he answered: "That is all she asked for." From plaintiff's testimony it would appear that the only (two) times he visited his wife after the separation was after the birth of the child, the paternity of which he at first questioned and procured a physician to examine defendant to ascertain whether or not she was pregnant, and if so for what period, in order to ascertain whether he was its cause. It is true he denied that such was his purpose, but his testimony fails to develop any other motive, and the one we have surmised is strengthened in the light of the circumstances under which the examination was made, which were: That some sort of court proceedings had been instituted against him for abandoning his wife while pregnant by him. Plaintiff also denied any excessive drinking on his part since his marriage, but he did not deny occasional indulgence on his part.

As a result of the legal proceedings referred to, plaintiff agreed to pay to his mother-in-law $20 per month towards the support of defendant, but some of it he neglected to pay and it was collected by garnisheeing his wages in the hands of his employer. He admitted that all of the feeble efforts on his part to procure his wife to return to him were for the purpose of ridding himself of defraying any fixed charges for her support and to procure custody of the child. He explained the assaults upon and striking of his wife as having been committed when he "thought he was playing," and when he was not mad. But defendant did not so testify, nor did plaintiff deny chasing her around the table with a butcher knife just preceding the abandonment, as she testified. There are a number of legitimate conclusions to be drawn from the manner in which plaintiff testified, and from his unconcern over the situation (except to accomplish the purposes supra); but we do not deem it necessary to detail them to any greater extent. Suffice it to say, that we are clearly of the opinion that the testimony to which we have referred is sufficient to demonstrate, not only that plaintiff fell far short of making his abiding place pleasant, agreeable, and happy for his newly acquired wife, but that on the contrary he so demeaned himself

toward her and her mother, plus his adverse attitude toward the latter, as to destroy his wife's happiness, and made it justifiable on her part in moving her habitation to that of her parents. That conclusion is deducible from the testimony, independently of the fact testified to by defendant that plaintiff peremptorily requested her to take that step, and which conclusion is fortified by other testimony in the case, including that of the drayman, and also by what plaintiff evaded and tried to conceal.

It is a settled rule, in the law relating to divorce, that the usual ground of "abandonment" or "desertion" without fault of the other spouse, so as to entitle the latter to a divorce therefor, is not necessarily perpetrated by the wife by merely leaving her husband's home, since the facts may have been such as to justify such an act on her part; and if the husband is the producer of such justifying circumstances it is he, and not his wife, who is guilty of the abandonment. The law on that subject is thus stated in 19 C. J. 56: "Desertion or abandonment consists in the voluntary separation of one spouse from the other for the prescribed time without the latter's consent, without justification, and without the intention of returning." In the same volume, on page 61, sec. 116, the text says: "The spouse who by his or her act intentionally brings the cohabitation to an end is guilty of desertion. Hence, where a spouse intentionally brings the cohabitation to an end by misconduct which renders the continuance of the marital relations so unbearable that the other leaves the family home, the former, and not the latter, is the deserter. It has been held that it is not necessary that the guilty party should entertain, in connection with the misconduct, any settled purpose to drive the other away, but it is enough if such is the natural consequence of the acts."

In Bishop on Marriage, Separation and Divorce, vol. 1, 709, the learned author states the rule in this language: "It is immaterial which of the married parties leaves the matrimonial home; the one who intends bringing the cohabitation to an end commits the desertion." Both of the texts that we have cited are expressly referred to and approved by this court in the recent cases of Watkins v. Watkins, 202 Ky. 141, 259 S. W. 20, and Hill v. Hill, 239 Ky. 745, 40 S. W. (2d) 367. Other domestic ones promulgating and approving

the same rule are referred to in those cases, and which will not be reproduced here, since they may be found by consulting those opinions. Applying that approved rule of law and practice, defining abandonment or desertion within the contemplation of divorce statutes, to the testimony that we have above outlined, with permissible deductions to be drawn therefrom, we are convinced that the court erred in dismissing defendant's counterclaim and cross-petition but properly dismissed plaintiff's petition.

There was no testimony to show that defendant was not a proper person to have custody of the infant child of the parties, and the court properly adjudged it to her; but plaintiff should be given an opportunity to visit it at appropriate times. The court, because of the character of judgment it rendered, made no ruling with reference to the wife's alimony, and no testimony as to what should be done with reference thereto appears in the record, since we have no information as to how much plaintiff is earning, nor the extent of his ability to earn. He is now under some sort of agreement to pay toward the support of his wife the sum of $20 per month, and which should continue until the question of alimony is investigated and determined.

Wherefore, the judgment is affirmed on the appeal but reversed on the cross-appeal, with directions to set it aside and to enter one in favor of defendant granting her a divorce from plaintiff, and the court will hear testimony on the question of alimony to be allowed the wife and render such judgment as the facts thereby developed authorize.