# Mackey v. Commonwealth.

(Decided Sept. 25, 1934.)

A. C. JARVIS and H. R. WILHOIT for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The appeal is from a conviction of the crime of seduction under promise of marriage, carrying a penalty of one year in prison. The prosecutrix testified explicitly that the defendant had sexual intercourse with her at a certain time and place, and unequivocally, with-

out any suggestion of affection or love, that she had yielded to him because of his offer and promise to marry her. There was no evidence of any artifice, beguilement, or blandishment exercised by him. He merely proposed that if she would indulge he would marry her. The letter of the testimony, strictly and technically construed, does present, as the appellant maintains, a simple barter. Being such, his counsel submits the proposition that: "Where the prosecutrix yielded to the act of intercourse solely because of defendant's promise to marry her and there was no motivating love on her part and no wiles, artifices or persuasions on the part of the defendant the case is not one of seduction but mere fornication, and when there was no evidence as to any such motivating love, wiles, artifices or persuasions it was the duty of the court to instruct the jury to find the defendant not guilty since it is the duty of the Commonwealth to prove every element of the offense."

Confidence is expressed in this point because of the case of Duggins v. Commonwealth, 217 Ky. 688, 290 S. W. 514. Upon a trial for violating the same statute (section 1214, Ky. Stats.), the defendant had offered an instruction to the effect that in order to convict him the jury must believe from the evidence three things, one of which was that the agreement on the part of the prosecuting witness was induced solely by the defendant's promise to marry her and but for such promise she would not have submitted. The trial court struck the word "solely" from the instruction and gave it. The appellant maintained that that was error. It is to be conceded that there is some language in the opinion sustaining the appellant's point made here. But the only thing decided in the case was that the court properly struck out the word "solely." The value of an opinion as a precedent lies in the decision of the court rather than in the particular reasoning or language used in arriving at the conclusion. The statute declares that "whoever shall, under promise of marriage, seduce and have carnal knowledge of any female under twenty-one years of age," shall be. guilty of a felony. When the opinion relied upon is read with the body of the law construing this statute and consideration is given to the practicalities and the obvious intent and purpose of the law, the contention of appellant loses its force. The word "seduce," in its ordinary, general use, means to

lead astray from the path of rectitude or duty and imports some species of artifice, beguilement, deception, or other seductive art. But the refinements of nomenclature for the sake of decency in speech may not be used to raise doubts and distinctions that obscure the real substance of a statute. The term has the specific meaning of inducing a female to surrender her chastity or to lead her from the path of virtue which she was following by such enticements or influences. Without the inducement by a false promise or the abuse of the simplicity and confidence of a virtuous woman by which her submission was obtained, the accomplished act would be purely meretricious and simple fornication or adultery.

In the statute under which the appellant was condemned, an essential element is the enticement or procurement of the consent of a girl under twenty-one years of age by means of or because of a promise to marry her. That unconditional promise must be the inducement or moving cause which prompted the woman to yield her chastity. That is the gist of the statutory offense, the elements of age and chastity being present. Webster's New International Dictionary; 3 Bouv. Law Dict. 3033; 57 C. J. 9; Stowers v. Singer, 113 Ky. 584, 68 S. W. 637, 24 Ky. Law Rep. 395; Commonwealth v. Tobin, 140 Ky. 261, 130 S. W. 1116; Jordan v. Commonwealth, 180 Ky. 379, 202 S. W. 896, 1 A. L. R. 617; Hoskins v. Commonwealth, 188 Ky. 80, 221 S. W. 230; Morehead v. Commonwealth, 194 Ky. 592, 240 S. W. 93; Lakes v. Commonwealth, 199 Ky. 802, 251 S. W. 982; Garrison v. Commonwealth, 243 Ky. 253, 47 S. W. (2d) 1028; Powell v. Commonwealth, 253 Ky. 68, 68 S. W. (2d) 754.

As thus measured, the evidence of the prosecutrix brought the case well within the terms and purpose of the statute, and, notwithstanding the defendant's vehement denials that he had ever carnally known her, it was sufficient to take the case to the jury and to sustain the verdict.

It was more than a year after the season of improper acts had closed, through the failure of the accused to visit the prosecuting witness, before an indictment was returned against him. On the day the case was set for trial the parties were married. The defendant upon this trial elaborately explained that he

married the girl, with a complete consciousness of innocence, because his lawyer had insisted that in such cases the universal experience had been that the accused man was certain of conviction be his denials and protestations of innocence ever so clear and emphatic. He was further influenced by an effort to avoid the shame that would rest upon his six year old boy by a former marriage if he were sent to the penitentiary, and in the belief that if he treated the girl right she would become ashamed of her prosecution and confess his innocence of the charge.

The statute provides that where the person charged shall have married the girl seduced before final judgment any prosecution instituted shall be suspended, but it shall be renewed and proceed as though no marriage had taken place if the accused shall willfully and without such cause as constitutes a statutory ground of divorce to the husband abandon or desert his wife within three years after the marriage. The provision permitting marriage to avoid prosecution looks primarily to making the best reparation possible, the fulfillment of the pledge which the seducer made in order to accomplish his sinful purpose. If an immediate or present abandonment without just cause were allowed, the object would be frustrated and the wrong sought to be punished aggravated.

The proof on this branch of the case is that immediately after the ceremony the accused left his bride at the courthouse altar and went his way because he didn't have time to go with her to get her clothing. She went to her home and a few days later, on a Thursday, was taken by her brother to the home of the appellant's parents, which he claimed as his home. At that time the appellant was employed in Manchester, Ohio. He came home Sunday following this Thursday, but there was little, if any, association. The atmosphere was blue. She testified:

"I asked him if he was going to stay all night and he said 'No, ma'am,' so I said I was going home; there was no use of us going on in this way if I couldn't go with him; and he said that was the least of his thoughts."

She did go to her father's home that afternoon. The defendant never communicated with her afterward nor made any provision for the support of herself and their

child. The appellant's defense was, and yet is, that his parents' home was the only one he had although he stayed at Manchester, Ohio, during the week days; that he had furnished the child with a blanket and clothing while they were at his father's home. He insists that he furnished her a home at his own domicile and that she abandoned him. He says that on that Sunday afternoon she said she was going to her home because he was going back to Manchester, and that he told her it was not necessary as he would provide for her and that he could do no more than he was doing at the present time. The question is resolved into whether there was any evidence to sustain the finding of the jury that the defendant had deserted or abandoned his wife, as defined in the instructions, about which no complaint is made. Our conclusion is that he did abandon her within the meaning and purpose of the statute. Support for this conclusion may be found in the following cases: Whitaker v. Commonwealth, 172 Ky. 846, 189 S. W. 1113; Yeager v. Yeager, 197 Ky. 353, 247 S. W. 5; Watkins v. Watkins, 202 Ky. 141, 259 S. W. 20; McGaughey v. McGaughey, 231 Ky. 209, 21 S. W. (2d) 245; Hill v. Hill, 239 Ky. 745, 40 S. W. (2d) 367; Hale v. Hale, 240 Ky. 331, 42 S. W. (2d) 333.

Several separate items of evidence are submitted as having been improperly admitted. This evidence is simply a statement by the prosecuting witness that the defendant had not recognized or treated her as a wife nor as a wife should be treated, and that they had never stayed in the same room since their marriage. On his cross-examination it was suggested in a question that the marriage register, which had been introduced, disclosed that he had been divorced, and in answer to the question, over objection, he stated that he was divorced. We may readily concede that the opinions or conclusions of the witness are incompetent, and that his statement that he was divorced was perhaps immaterial; but we cannot see that their admission was in any degree harmful or prejudicial.

The judgment is affirmed.