# Byrley v. Commonwealth.

(Decided May 19, 1936.)

WILLIAM LEWIS & SON for appellant.

B. M. VINCENT, Attorney General, and J. J. LEARY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Jimmie Byrley appeals from a judgment convicting him of seduction under promise of marriage, and fixing his punishment at three years' imprisonment.

The prosecutrix was 16 years of age at the time of the trial, and appellant was 20. According to her testimony, she and appellant had been sweethearts for about 2½ years, and became engaged in June or July, 1933. The first act of intercourse occurred July 31, 1933, and he had intercourse with her several times thereafter, the last time on July 14, 1935. She testified that she yielded by reason of the promise of marriage. Appellant testified that he never, at any time, had intercourse with the prosecutrix, and evidence was introduced by him to show that she was unchaste. No witness testified that her reputation for virtue and morality was bad, but unchastity is sought to be inferred from her conduct on one or two occasions. Bill Cheek and Charlie Byrley, appellant's brother, testified that they went to the home of Abe McFadden one night in October or November, 1934, and met the prosecutrix and Eula Mooney, Mrs. McFadden's sister. The McFaddens were not at home. Charlie Byrley testified that there were three rooms in the house, and that the McFadden children were asleep in one, he and Eula Mooney were in the kitchen, and Cheek and the prosecutrix were in the other room which was dark. Cheek corroborated him, but admitted that he made no improper proposals to the prosecutrix and that she was guilty of no misconduct on that occasion. Prosecutrix denied that she was ever in the McFadden home when Cheek was present.

Appellant complains because the only unqualified statement of the prosecuting witness that she yielded by reason of the promise of marriage was in response to a leading question by the commonwealth's attorney, but no objection was made to the form of the question. He also complains of the testimony of Charlie Cobb, who was introduced in rebuttal by the commonwealth. The complaint seems to be based on the theory that Cobb's testimony was in chief. The prosecutrix testified that the last time appellant had intercourse with her was at Levy Jackson Wilderness Park on July 14, 1935, and appellant denied that he had anything to do with her on that day. He stated that he did not see Charlie Cobb at the park, and did not re-

quest him to look for the prosecutrix. Cobb testified that he was with appellant at the park, and that appellant requested him to look for the prosecutrix, and that he saw him with her during the day. His testimony was contradictory of appellant's testimony, and was competent in rebuttal.

Appellant also insists that the verdict is flagrantly against the evidence. The testimony of the prosecutrix is uncontradicted except by appellant and alone is sufficient to sustain the verdict. Hurt v. Com., 257 Ky. 239, 77 S. W. (2d) 780; Gossage v. Com., 256 Ky. 532, 76 S. W. (2d) 596; Mackey v. Com., 255 Ky. 466, 74 S. W. (2d) 915; Wolfe v. Com., 229 Ky. 385, 17 S. W. (2d) 219, 64 A. L. R. 263.

The instructions are complained of because they failed to define "seduction" and to require the jury to believe the prosecutrix was a woman of chaste conduct at the time of the seduction. The term "seduction" need be defined or the question of chastity submitted to the jury only when evidence has been introduced which tends to show that the prosecutrix was unchaste. This is because of the rule that a woman is presumed to be chaste until the contrary is shown. Wolfe v. Com., supra; Maples v. Com., 242 Ky. 212, 45 S. W. (2d) 1060; Fogle v. Com., 210 Ky. 745, 276 S. W. 814. It is extremely doubtful whether the evidence was sufficient to raise the question of chastity, but, conceding that there was some proof tending to establish unchastity on the part of the prosecutrix, the instructions defined the term "seduction" and submitted the question of chastity with sufficient clarity to enable the jury to pass on the issue without being misled. Instruction No. 1 reads:

"If you shall believe from the evidence, beyond a reasonable doubt, that the defendant, Jimmie Byrley, in this County, and within four years next before the finding of the indictment herein, did promise to marry Hattie Hinkle, a female person then and there under twenty-one years of age, and that he, the said Jimmie Byrley, did then and there, under said promise of marriage, if any such there was, unlawfully and feloniously seduced and have carnal knowledge of her, the said Hattie Hinkle, and that the said Hattie Hinkle had been

theretofore, for a reasonable time, a woman of chaste conduct, and that said Jimmie Byrley has failed and refused and now fails and refuses to marry her, then you will find the defendant guilty as charged in the indictment, and fix his punishment at confinement in the penitentiary of this state for a period of not less than one year, and not more than five years, in your discretion."

The instruction is couched substantially in the language of the statute (Ky. Stats., sec. 1214), and such an instruction sufficiently defines "seduction" unless the question of chastity is at issue on the evidence, when it must be defined so as to include and present this element of the offense for consideration by the jury. Scalf v. Com., 262 Ky. 469, 90 S. W. (2d) 729. The instruction includes and presents the question of chastity. It is true that where a woman's chastity is put in issue the jury must believe that she was, at the time complained of and had been for a reasonable time theretofore, a woman of chaste conduct. Berry v. Com., 149 Ky. 398, 149 S. W. 824. While the instruction does not specifically require the jury to believe that the prosecutrix was of chaste character at the time of the intercourse, yet such is the only reasonable interpretation that can be given to it, and the jury, which presumably was composed of men of at least average intelligence, necessarily understood that to be its meaning.

Appellant argues, in substance, that to constitute seduction there must be some artifice, deceit, or influence on the part of the seducer which induces the woman to surrender her chastity, and that an instruction defining "seduction" should incorporate that idea. Under our statute, however, the promise of marriage is the artifice which renders seduction a criminal act, and the question to be determined by the jury is whether the woman yielded by reason of the promise. The unconditional promise to marry her must be the moving cause which induces the woman to surrender her chastity. The instruction complained of fairly presented that element, and, as a whole, sufficiently defined seduction.

The judgment is affirmed.