## Catron v. Commonwealth.

(Decided May 14, 1937.)

HON. E. BERTRAM for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—Reversing.

The appellant was indicted and convicted in the Clinton circuit court of the crime of seduction and sen-

tenced to two years in the penitentiary. He has appealed from the judgment and insisting for a reversal of same on the following grounds: (1) The court erred in overruling his motion for a continuance on account of the absence of certain witnesses; (2) the court erred in refusing to permit the affidavit of appellant to be read to the jury as the depositions of the absent witnesses; (3) the court erred in the admission of certain evidence offered in behalf of appellant; and (4) the court erred in the instructions given to the jury.

The indictment was returned in December, 1935, and the case was set for trial at the March, 1936, term of the court. It appears that appellant had subpoenas issued for a number of witnesses, including the ones whose absence is complained of in this trial, but upon the calling of the case many of his witnesses failed to appear, most of whom had been summoned, and others had fled the jurisdiction of the court or otherwise concealed themselves. Because of the absence of appellant's witnesses the case was continued with a rule to try at the July, 1936, term of the court and an order was entered permitting appellant to take the depositions of certain witnesses who were out of the jurisdiction of the court to be read as evidence in appellant's behalf at the succeeding July term. However, soon after the adjournment of the March term of the court, the absent witnesses, with the possible exception of one, and all of whom resided in Clinton county except Bill Bertram, who resided in Wayne county, returned to their homes, and instead of taking their depositions, appellant procured subpoenas for them and placed the subpoenas in the hands of the sheriff of Clinton county for those who resided in Clinton county, and placed in the hands of the sheriff of Wayne county a subpoena for Bertram, who resided in that county, and procured attachments for certain witnesses who failed to appear at the March term of the court.

When the case was called for trial at the July term of the court certain witnesses for whom process had been duly issued and placed in the hands of the sheriff, as indicated above, again fled the jurisdiction of the court or otherwise concealed themselves and failed to appear at the trial. Appellant again moved the court for a continuance of the case because of the absence of these witnesses, and in support of his motion he filed his

affidavit in the usual form, stating that Sam Dickerson, Willard Cooksey, Floyd Abston, Bill Bertram, and Minnie Mason were material witnesses for him and for all of whom subpoenas had been issued and duly placed in the hands of the sheriff of their respective counties; and, that if said witnesses were present he could prove by Dickerson, Cooksey, Abston, and Bertram that each of them had had sexual intercourse with the prosecuting witness, Mary Perdew, several times within one year prior to and including the month of April, 1935, which would be true when proven; and that Minnie Mason would state that the prosecuting witness told her immediately after April 7, 1935, that she, the prosecutrix, had sexual intercourse with Floyd Abston on the night of April 7, 1935, when she, prosecutrix, and Abston attended a wedding supper at a neighbor's home. In this connection we may note that the prosecutrix claims that the act of seduction with which appellant is charged occurred on the night of April 6, 1935. This signifies the importance of the alleged evidence of the absent witnesses if they should testify to the facts set out in the affidavit.

The court overruled appellant's motion for a continuance for reason that the case was continued at a previous term of the court with a rule to try at the July term and that appellant was permitted to take the depositions of his absent witnesses and that the witnesses had been in the county since the last term of court and appellant failed to take their depositions. Conceding, without deciding, that it was not an abuse of a sound discretion on the part of the court to refuse appellant another continuance of the case but whether or not the court should have permitted appellant's affidavit to be read to the jury as the depositions of the absent witnesses, presents a more serious question. The record discloses that soon after the adjournment of the March term of the court the absent witnesses returned to their homes within the jurisdiction of the court, and appellant promptly had subpoenas issued for them and endeavored to procure their personal attendance in court instead of taking their depositions. It is the general rule that the depositions of witnesses cannot be read in a criminal case when such witnesses are within the jurisdiction of the court and their attendance may be had by proper process of the court. It may be said, however,

that in view of the fact that appellant's witnesses had fled the jurisdiction of the court at the previous term thereof, appellant might have anticipated that they would again absent themselves and fail to appear, as they did, a high degree of care and precaution might have dictated that he procure their depositions as well as having them summoned. But inasmuch as appellant procured proper process for the attendance of his witnesses after their return to their homes which were within the jurisdiction of the court, we do not think that his failure to take the double precaution of taking their depositions in addition to procuring subpoenas for them was such lack of diligence on his part as would deprive him of the right to have his affidavit read to the jury as the depositions of the absent witnesses. Our conclusion is that the court erred in refusing to permit the affidavit to be read to the jury as the depositions of the absent witnesses, and the case must be reversed upon that ground.

Inasmuch as the case must be reversed on the ground heretofore stated, it becomes unnecessary for us to discuss whether or not the evidence is sufficient to sustain the verdict. However, for the benefit of another trial we may discuss certain alleged errors relating to the ruling of the court on certain evidence on the present trial. Some of appellant's witnesses testified to certain indiscreet conduct of the prosecutrix with other men in being alone with them under suspicious circumstances, and the court admonished the jury to consider such evidence as affecting the credibility of prosecutrix as a witness and for no other purpose. Ordinarily, evidence relating to one's general moral character is for the purpose only of affecting their credibility as a witness, but in a criminal prosecution for seduction under promise of marriage, the chastity and virtue of the woman claiming to have been seduced, is germane to the issue and all evidence tending to affect her chastity and virtue within a reasonable time previous to the alleged seduction should be admitted as substantive evidence. Berry v. Com. 149 Ky. 398, 149 S. W. 824.

Another point of evidence complained of is that J. A. Fowler and John O. Dicken, county attorney and circuit court clerk respectively, of Wayne county, testified that there were certain indictments pending in the Wayne circuit court against Willard Cooksey, one of ap-

pellant's absent witnesses mentioned in the affidavit for a continuance, and that Cooksey was a fugitive from justice. Apparently the evidence of these witnesses was for the purpose of showing that appellant knew he could not procure the attendance of Cooksey as a witness, and for that reason he was not entitled to a continuance of the case because of Cooksey's absence. The objection urged to the evidence of Fowler and Dicken is that it was not shown that the Willard Cooksey referred to by them as being indicted and a fugitive from justice, was the same Willard Cooksey named in appellant's affidavit for a continuance and relied upon as a witness in the case. However, appellant had an opportunity to show that his alleged absent witness was not the same Willard Cooksey referred to by the county attorney and clerk, if such was the case. We express no opinion as to whether or not this evidence was prejudicial, but we may say, however, that if this evidence is offered on another trial of the case it should be shown that the Willard Cooksey relied on by appellant as a witness for him and the Willard Cooksey referred to by the county attorney and clerk is the same person.

The next complaint is that the court, over the objections of the appellant, permitted the commonwealth to prove by the prosecutrix that as a result of her sexual intercourse with appellant she became pregnant and gave birth to a child. It is insisted by counsel that this was highly prejudicial and a reversible error, and in support thereof he cites Roberson's New Criminal Law, sec. 1028; Jordan v. Com., 180 Ky. 379, 202 S. W. 896, 1 A. L. R. 617; Maples v. Com., 242 Ky. 212, 45 S. W. (2d) 1060. It must be conceded that the admission of such evidence would have constituted reversible error if it had first been introduced by the Commonwealth over the objections of appellant. But upon examination of the record, we find that counsel for appellant was the first one to bring into the record this evidence. At the close of the Commonwealth evidence in chief counsel for appellant recalled the prosecutrix for further cross-examination and asked her about visiting her aunt and that if her aunt asked her if she was pregnant; and further asked her that if she did not tell her aunt that she was pregnant. Both of the questions were answered in the negative. She was further asked: "Didn't you tell her (aunt) that Floyd Abston was the father of your

child?'' In response to that question, she answered; ''I told her that Paul Catron tried to get me to lay it on Floyd Abston.'' Counsel for appellant continued to ask prosecutrix many other questions in regard to her being pregnant and as to who was the father of the child. On further direct examination of prosecutrix by the Commonwealth's attorney, she was further examined in regard to her being pregnant and as to who was the father of her child, but it appears that this was rather in the form of a cross-examination in response to what appellant's counsel brought out previously relating to her being pregnant. Counsel for appellant having first brought into the record the evidence relating to prosecutrix being pregnant, it could not have been prejudicial for the Commonwealth to further examine the witness on the same subject.

Lastly, it is insisted that instruction No. 6 defining the word ''seduction'' was erroneous. That instruction reads:

''The word seduction when applied to the conduct of a man toward a woman, means the use of some influence, artifice, promise or means on his part, by which he induces a woman, who is then and has theretofore for a reasonable time been a woman of chaste conduct, to submit to unlawful intercourse with him.''

The objection offered to this instruction is that it does not contain the words ''under promise of marriage.''

Instruction No. 1 told the jury, in substance, that it would find appellant guilty if it believed that he seduced and had carnal knowledge of the prosecutrix under promise of marriage; and instruction No. 2 reads as follows: ''Although the jury may believe from the evidence in this case beyond a reasonable doubt that the defendant, Paul Catron had sexual intercourse with the prosecuting witness Mary Perdew, yet if you shall further believe from the evidence that such intercourse was the result of a mutual desire between the prosecuting witness and the defendant to gratify a lustful passion and not because of a promise of marriage, you will then in that event find the defendant not guilty.''

In view of instructions Nos. 1 and 2, it is doubtful that the jury could have been misled by instruction No.

6, because of the absence of the words "under promise of marriage." However, there is a possibility that the definition given by the court could have been misleading to the jury, and upon another trial of the case the court will include in its definition of the words "seduce" or "seduction," the words "under promise of marriage." The promise of marriage is the gist of the crime of seduction in a criminal prosecution (Mackey v. Com., 255 Ky. 466, 74 S. W. (2d) 915; Gossage v. Com., 256 Ky. 532, 76 S. W. (2d) 596) and it is not material whether the man use any influence, artifice, or means, other than the promise of marriage. The word "seduce," as used in a criminal prosecution like the instant case, means the inducing of a woman by a man to yield or surrender her virtue and chastity by reason of the man's promise to marry her. The definition of the word "seduce" or "seduction" as applied to a civil action for seduction, and, as used in a criminal prosecution for seduction under promise of marriage must not be confused. It appears that the definition given by the court in instruction No. 6 is in harmony with the generally accepted definition of the word "seduction" as used in a civil action. In Stowers v. Singer, 113 Ky. 584, 68, S. W. 637, 24 Ky. Law Rep. 395, the approved definition of seduction is substantially the same as the definition given in the present case. But that was a civil action by the father to recover damages for the seduction of his daughter and in such actions it is not necessary that the seduction be the result of a promise of marriage. Com. v. Wright, 27 S. W. 815, 16 Ky. Law Rep. 251, was a criminal prosecution for seduction under promise of marriage. The definition of the word "seduction" enunciated in that case is substantially the same as the one given in the present case, except it included the words "under promise of marriage," whereas no such words were used, nor should be used, in a civil action for damages for seduction. Stowers v. Singer, supra.

For the reason stated, the judgment is reversed and remanded for proceedings consistent with this opinion.

The whole court sitting.