**HOLT v. COMMONWEALTH.**

Court of Appeals of Kentucky.
June 19, 1953.

L. C. Lawrence, Jamestown, Ralph Hurt, Columbia, Kenton Cooper, Jamestown, for appellant.

J. D. Buckman, Jr., Atty. Gen., and John B. Browning, Asst. Atty. Gen., for appellee.

SIMS, Chief Justice.

Eldridge Holt in seeking to reverse a judgment imposing upon him a sentence in the penitentiary for five years for the seduction of Edith Shaw, a girl under the age of 21 years, under a promise of marriage, assigns three errors: 1. The verdict is not sustained by the evidence; 2. the court erred in admitting incompetent and in rejecting competent evidence; 3. the instructions are erroneous.

Appellant was 23 and Edith was 18 years of age at the time of the alleged offense and their homes were about a mile and a half apart in Russell County. Edith's testimony was that appellant paid court to her for about a year and they saw each other three or four times a week. She testified that she loved appellant, who had promised to marry her and relying upon this promise, she submitted herself to him. According to Edith, they had sexual intercourse with each other on several occasions; that she became pregnant in March 1951, and appellant refused to marry her; but he did pay her doctor and hospital bills of over $200 when her baby was born in December 1951.

While admitting that he visited the girl at her home and took her places, Holt denied ever having promised to marry Edith or that he ever had sexual intercourse with her. He testified he paid the doctor and hospital bills to protect his and his family's name from scandal and upon the promise of Edith's brother and mother that he would be relieved from any responsibility concerning the child. Edith and her mother signed a writing to this effect before a notary, the last paragraph of which reads: "The said Edith Shaw by this agreement states that the said Elbert Ray Holt did not in any way seduce her under promise of marriage and that he never at any time promised to marry her in order to induce her to have sexual intercourse with him." On cross-examination this writing, which seems to have been prepared by County Judge Edmonds, was shown to Edith and while she admitted signing it, she testified Judge Edmonds did not read to her the paragraph above quoted. The mother of Edith testified she did not want to sign the paper but did so upon the advice of Judge Edmonds.

There is direct conflict in the testimony of the principals of this unfortunate affair. The girl is supported in her testimony that appellant had intercourse with her by her mother, who testified she heard the couple on a bed in a room next to her. Also, Edith is corroborated to some extent by the testimony of Attis Higginbotham, who saw Edith and appellant lying "tolably close" to each other on a quilt in the back yard of her home. The writing above referred to contradicts both Edith and Eldridge to some extent. She stated expressly in the writing that Eldridge did not seduce her under the promise of marriage, although she testified this part of the statement was not read to her. Appellant's act in taking this writing and the County Judge to Edith's home and getting the mother and daughter to sign it and in paying the doctor and hospital bills, is rather unusual conduct for an innocent man. True, Eldridge testified he did this on the advice of his father and to protect the family name, but the jury might have thought otherwise.

This case is peculiarly one for the jury and we cannot say the verdict is not supported by the evidence. We have

held that a conviction in this character of case can be had on the testimony alone of the prosecutrix, as usually the knowledge of what has occurred is limited to the principals themselves. Duggins v. Com., 217 Ky. 688, 290 S.W. 514, last paragraph page 518. Also see Peyton v. Com., 288 Ky. 601, 157 S.W.2d 106, 110, and cases there cited.

■ The incompetent evidence of which complaint is made is that the court permitted the prosecutrix to testify she became pregnant and gave birth to a baby. Such testimony is not admissible in this character of case. But here the accused did not object to this testimony at the time it was admitted, hence he cannot complain of it now. Maples v. Com., 242 Ky. 212, 45 S.W. 2d 1060. Another reason why appellant cannot be heard to complain of this evidence is because he, in cross-examining Edith when she first testified, introduced the writing signed by prosecutrix and her mother, showing Edith gave birth to the illegitimate child. Catron v. Com., 268 Ky. 536, 105 S.W.2d 618, 621.

Melvin Bennett testified prosecutrix's reputation for morality was good. Counsel for accused on cross-examination asked Bennett what were his feelings towards accused and he replied, "I don't like his ways". The Commonwealth on redirect-examination, over the objection of accused, was permitted to ask the witness, "What about his ways"? The witness said they fell out over a boundary line between their farms.

■ It is competent on the cross-examination of a witness to elicit facts tending to show any bias or friendship of the witness for the party for whom he testified, and to show hostility towards the party against whom he is called. The scope and extent of cross-examination for this purpose rests within the sound discretion of the court. However, no more of the facts and circumstances should be admitted than are necessary to give a fairly intelligent understanding of the cause, nature and effect of the influence on the witness; but the door is not thrown wide open to prove in detail the reasons therefor, or to go into the merits of the controversy. 58 Am.Jur.

"Witnesses" § 715, pp. 386, 387; also see Annotations 74 A.L.R. 1157.

■ Certainly, the court here did not abuse its discretion in letting it be brought out on cross-examination that the witness was hostile to accused over this boundary line. In no way could that fact prejudice accused before the jury.

■ The competent testimony which appellant contends the court erroneously excluded is that of Richard Bryant, which related a specific act of lewdness by prosecutrix at White Chapel Church. The court did exclude this testimony when it was first offered. Thereupon, counsel made an avowal of what the witness would have testified had he been permitted to answer. Ordinarily, evidence as to general moral character is for the purpose of affecting the credibility of a witness; but in a seduction case the chastity and virtue of the prosecutrix is germane to the issue and all testimony tending to affect her chastity, within a reasonable time before the alleged seduction, is admissible as substantive evidence. Catron v. Com., 268 Ky. 536, 105 S.W.2d 618.

■ After excluding Bryant's testimony, the court a few minutes thereafter changed his ruling and the witness was recalled and testified to prosecutrix's act of lewdness at this church. Furthermore, the court permitted other witnesses to testify as to specific acts of lewdness of prosecutrix on other occasions. Therefore, the complaint of accused that the court excluded competent evidence is unfounded.

■ The criticism directed at the instruction is that it does not negative the four-year statute of limitation incorporated in KRS 436.010(4), providing all prosecutions for this crime must be commenced within four years after the commission of the offense. The indictment was returned at the February 1952 term and charged the crime was committed "on the ————— day of March 1951". All the testimony related to acts occurring within one year before that date. The instruction reads: "If you shall believe from the evidence, beyond a reasonable doubt, that the defendant, Eldridge Holt, in this county,

and before the finding of this indictment herein, did promise to marry Edith Shaw, * * *". It would have been better form had the court in this part of the instruction used the expression "and within four years before the finding of this indictment". We can readily see that in many cases it might be reversible error for the court not to include in the instruction the four-year statutory limitation. But here, where the indictment charged the offense was committed in March 1951, and all the testimony related to acts occurring within one year before that date, the jury was bound to know the offense referred to in the instruction was committed within four years before the indictment was returned in February 1952. We cannot see how appellant was prejudiced by the instruction given. This identical form of instruction is approved in Stanley's Instructions to Juries, § 969, p. 1286.

Perceiving no error prejudicial to the substantial rights of appellant, the judgment is affirmed.