**Hubert W. BARRETT, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

Nov. 3, 1980.

Jack E. Farley, Public Advocate, M. Gail Robinson, Asst. Public Advocate, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., Martin Glazer, Asst. Atty. Gen., Frankfort, for appellee.

CLAYTON, Justice.

Appellant, Hubert Barrett, was indicted along with his brother, Robert Barrett, and Lee Abell for first–degree robbery. Appellant was convicted of this offense as well as for being a second–degree persistent felony offender by the Kenton Circuit Court. He was sentenced to life imprisonment.

On the evening of February 16, 1979, the trio of appellant, Robert Barrett, and Lee Abell met at the "Sly Fox" Lounge in Erlanger, Kentucky. After three or four hours of socializing they left in Abell's car and patronized two more bars, "The Pad" and "Big Daddy's." What transpired after that was the subject of disputed testimony at trial.

On that same evening a Gulf self–service station in Erlanger was robbed by three men. The employee on duty that night, Norma King, testified that two men wearing ski masks came into the station and robbed the cash register while a third waited outside in an automobile. After taking the money, the robbers forced Ms. King into the car, drove a short distance, and released her. She reported the robbery and the license plate number of the getaway car to police who eventually traced the vehicle's registration to Lee Abell. Subsequently he and the Barrett brothers were indicted for first–degree robbery but the charge was dropped against Abell when he pleaded guilty to a misdemeanor and agreed to testify for the prosecution.

Barrett's conviction was obtained largely due to Abell's testimony. He testified that he, appellant, and Robert Barrett were a bit "tipsy" after visiting the three bars. The Barretts allegedly told him to pull into the Gulf station and wait while they went inside. According to Abell, the Barrett brothers returned with Ms. King and the money. All four drove off and they set her free on the side of the road a short time later.

Cross–examination of Abell revealed certain hostilities between him and appellant. He stated that "every time we get mixed up with them [the Barretts] one of us wind up in trouble." Later appellant took the stand and attempted to explain the tension between the Barretts and the Abells in order to shed light on Abell's possible motive for testifying. Before he could elaborate, however, the prosecution objected to the testimony on the grounds that it was irrele-

vant and immaterial. The trial court sustained the motion. Later, outside the jury's presence, appellant made an avowal during which he elaborated on the hostility between the Barretts and the Abells. The transcript of this proceeding reads like the plot from a soap opera. Barrett stated that on the very night of the robbery he and Abell had nearly gotten into a fight while discussing a prior love affair between Abell's brother, Victor, and Barrett's married sister. This relationship had resulted in the sister's husband burning down Victor's house and injuring him. Another incident involved bitterness over Victor's shooting and killing a friend of the Barretts which resulted in Victor's conviction and imprisonment.

At the conclusion of Barrett's avowal the trial court reiterated its ruling that this particular testimony was irrelevant. Appellant argues that the preclusion of this testimony prevented him from exposing Lee Abell's possible bias and denied him the right of confrontation guaranteed under the Sixth Amendment to the United States Constitution and Section 11 of the Kentucky Constitution. We find merit in his argument.

The right of an accused to confront the witnesses against him is one of the more fundamental ones applicable to the states. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Encompassed in this constitutional guarantee is the right to allow the jury to assess a witness' motive for testifying in order to expose possible prejudice. Evidence of a witness' hostility or prejudice against a criminal defendant is material and goes to the weight of the testimony. Only the scope and extent of questioning for the purpose of showing prejudice is within the discretion of the trial court. *See Holt v. Commonwealth*, Ky., 259 S.W.2d 463 (1953).

In recent years the United States Supreme Court has underscored its position that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right to confrontation. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

This court has long adhered to the principle that any evidence of a witness' bias, hostility, or interest is germane to the question of the credibility and should be presented to the jury. *Campbell v. Commonwealth*, 234 Ky. 552, 28 S.W.2d 790 (1930); *Holt v. Commonwealth, supra*. As we have stated:

> The interest of a witness, either friendly or unfriendly, in the prosecution or in a party is not collateral and may always be proved to enable the jury to estimate credibility. It may be proved by the witness' own testimony upon cross–examination *or by independent evidence.*

*Parsley v. Commonwealth*, Ky., 306 S.W.2d 284, 285 (1957) (emphasis added).

In the instant case the trial court ruled that the past differences between appellant's family and the Abells lacked sufficient materiality to warrant submission to the jury. We feel, however, that these past incidents may have played a significant role in Lee Abell's motive to testify against Barrett.

We are of the opinion that the trial court abused its discretion in not allowing the jury to hear Barrett's testimony regarding the "bad blood" between his family and the Abells. This information was certainly relevant as it pertained to Lee Abell's motive for testifying. The trial judge's disallowal of it denied Barrett his constitutional right to confront the witnesses against him.

The judgment is reversed and remanded for a new trial consistent herewith.

PALMORE, C. J., and AKER, CLAYTON, LUKOWSKY, STEPHENSON, and STERNBERG, JJ., sitting.

All concur.