## Jordan v. Commonwealth.

(Decided April 30, 1918.)

### Appeal from Lawrence Circuit Court.

1. Seduction—What Commonwealth Must Prove—Sufficiency of Evidence.—In a prosecution for seduction under section 1214 of the Kentucky Statutes, it is only necessary that the Commonwealth should prove first, the act of seduction, and second, that it was accomplished under and by reason of a promise of marriage, and a conviction may be had upon the evidence of the prosecuting witness alone, no corroboration being necessary.

2. Seduction—Evidence of Pregnancy or Birth of Child Incompetent. —In a prosecution under the statute for seduction, evidence of pregnancy of the prosecuting witness, or the fact that she gave birth to a child is incompetent, and the exhibition of the child, alleged to be the offspring of the seduction complained of, as the child of the defendant is inadmissible.

3. New Trial—Misconduct of Attorney—Argument of Incompetent Evidence.—Where the Commonwealth's attorney, in his argument before the jury, commented on incompetent and prejudicial evidence permitted to be introduced against the defendant, it was reversible error.

FRED M. VINSON, A. O. CARTER and J. T. SWETNOM for appellant.

CHARLES H. MORRIS, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellant, Jordan, was indicted under section 1214 of the Kentucky Statutes for the alleged offense of seducing Agnes Hayes, a girl under twenty-one years of age, committed under and by virtue of a promise to marry her. A trial under the indictment resulted in the conviction of Jordan, his penalty being fixed at confinement in the penitentiary for one year.

On this appeal a reversal of the judgment on the verdict is asked because of alleged errors committed by the trial court in the admission of evidence, and misconduct of the attorney for the Commonwealth.

Briefly stated, and confined to such facts as may be needful in disposing of the questions raised, it appears that Jordan, who was about twenty-three and Miss Hayes who was about nineteen years old, had the illicit intercourse, that was the basis of the prosecution, in January, 1917, and that as the result of this act of intercourse a child was born to Miss Hayes in October, 1917. Jordan, when testifying in his own behalf, admitted the act of intercourse, but denied that it was preceded or accompanied by any promise of marriage on his part, or that the subject of marriage was, at any time during or previous thereto, mentioned or discussed in any manner by them. It is said in brief for the Commonwealth that Jordan admitted, during his testimony, that he was the father of the child, but we do not find in the record that he made any admission of this character, or that any question concerning this matter was asked him during his examination as a witness. Agnes Hayes also testified as to the act of intercourse in January, 1917, but said that she was induced to and did consent to commit it on account of previous promises by Jordan to marry her, and further said that the child born to her, in October, 1917, was the offspring of this act of intercourse which was the only one they were guilty of. There are, in the record, some circumstances supporting the denial of Jordan that he ever promised to marry Agnes Hayes, and other circumstances that tend to support her evidence that he did promise to marry her. We may, therefore, say that, looking to the evidence alone, there was sufficient to sustain the finding of the jury that the act of intercourse was committed under a promise to marry on the part of Jordan, and so unless during the progress of the trial errors, prejudicial to the substantial rights of Jordan, were committed by the trial court, the judgment should be affirmed.

While Agnes Hayes was on the witness stand and being examined by the attorney for the Commonwealth, she was asked and answered these questions: "Q. As I understand it after this intercourse you became pregnant? A. Yes, sir. Q. And did you have a baby? A. Yes, sir. Q. When was it born? A. The 27th day of October, 1917. Q. Where is that baby? A. My sister has it in the room there. Q. Will you please step in there and get it? A. Yes, sir." At this point, the record shows that: "The defendant objected to the exhibi-

tion of the baby before the jury by the prosecuting witness. The court overruled said objection, to which the defendant excepts." Following this, these questions were asked and answered: "Q. Is that your baby born the 27th day of October, 1917? A. Yes, sir. Q. Who is the father of that child? A. Schofield Jordan."

Now, the question is, was it competent for the Commonwealth to exhibit before the jury, under the circumstances stated, the child? In considering this question it should be kept in mind that Jordan, at this time, had not been introduced as a witness in his own behalf. Agnes Hayes was the first witness introduced for the Commonwealth and Jordan was standing before the jury upon his plea of "not guilty" which made it incumbent upon the Commonwealth to prove the essential facts charged in the indictment, which were, first: The act of seduction or intercourse, and second: that it was accomplished under and by reason of a promise of marriage on his part.

It thus being incumbent upon the Commonwealth to prove these two essential elements of the offense, the point at issue narrows down to the inquiry: was it admissible for the Commonwealth, in attempting to establish the facts mentioned, to exhibit before the jury the child, then a little over three months old, that Agnes Hayes said Jordan was the father of? We are clearly of the opinion that the exhibition of the child did not throw any light on the issues in the case, or tend circumstantially or otherwise to corroborate the evidence of Agnes Hayes that she had been seduced by Jordan under a promise of marriage and so was incompetent. If she was seduced under a promise of marriage, the evidence of the commission of the offense was complete so far as the Commonwealth was concerned when Agnes Hayes testified to the promise of marriage and the act of intercourse following and induced by it. It was wholly immaterial, in making out the case, for the Commonwealth, whether or not she became pregnant or a child was born as the result of the act of seduction complained of. Her pregnancy or the birth of the child did not add anything to or take anything away from the offense charged which grew out of acts and conduct that happened before either of these things came into existence.

Objection was made, as we have seen, to the exhibition, before the jury, of the child, but it does not appear that any exception was saved to the evidence of Agnes

Hayes that she became pregnant or that a child was
born to her, but in view of the fact that there will be
another trial, the admissibility of this evidence should
be determined in order that another trial may be free
from error in this respect. This question is a new one
in this court, but it has been considered in a number
of cases by courts of other states and there is some con-
flict in the authorities notwithstanding the fact that in
the states from which the opinions, later to be referred
to, have been taken, the statute requires that the evi-
dence of the prosecuting witness in seduction cases must
be corroborated by other facts or circumstances. In
other words, in these states a conviction cannot be had
on the unsupported evidence of the prosecuting witness.
Where corroboration of the prosecuting witness is neces-
sary to sustain the charge that the seduction complained
of was committed under a promise of marriage, it can
readily be seen that much stronger reasons would ex-
ist for the admission of evidence of pregnancy and child-
birth than in jurisdictions like ours where no corrobora-
tion is necessary and a conviction may be had upon the
evidence of the prosecuting witness alone. But, as we
have said, even in states where corroboration is required,
there is conflict in the authorities as to the admissibility
of evidence of this nature and we have found no authority
holding it competent. Cases on this subject are: State
v. Carron, 18 Iowa 372, 87 A. D. 401; State v. Brass-
field, 81 Mo. 151, 51 A. R. 234; State v. Danferth, 48 Ia.
43, 30 Am. Rep. 387; Clark v. Bradstreet, 80 Me. 454-6
Am. St. Rep. 221; Barnes v. State, 37 Tex. Crim. Rep.
320; People v. Kearney, 110 N. Y. 188. In this last-men-
tioned case the court said, in commenting on the admis-
sibility of evidence, that a child was born in a prosecu-
tion for seduction, under promise of marriage, under a
statute requiring that the evidence of the prosecuting
witness should be corroborated, said: "We fully real-
ize the truth of the proposition that evidence in corrobor-
ation of the prosecutrix in this class of cases upon the
points where corroboration is necessary, viz., the seduc-
tion and the promise of marriage, is not very easily
obtainable. For that reason only such corroboration as
in the natural and ordinary course of events these facts
are capable of is to be required. But this rule cannot
be construed to allow evidence of a fact which does not
in the least tend to support the evidence of the prosecu-

trix upon either of the two points which require it. That the evidence in this case, of the nature herein commented on, was of a very dangerous and probably highly injurious character and tendency we think admits of no controversy. The crime is a most atrocious one, and one which most naturally tends to enlist the sympathies of all men, and of course of jurors, in favor of the victim. In such cases, while administering the law with perfect fairness, courts must be extremely careful that no evidence of a tendency to excite or influence the resentment of jurors, and which does not tend to support the evidence of the prosecutrix, or to connect the defendant with the commission of the crime, should be permitted to go to the jury.''

But, as we have said, in this state a conviction may be had on the unsupported evidence of the prosecuting witness that the act of seduction was accomplished under a promise of marriage as our statute in section 1214 simply provides that: ''Whoever shall, under promise of marriage, seduce and have carnal knowledge of any female under twenty-one years of age, shall be guilty of a felony and, upon conviction thereof, shall be confined in the penitentiary not less than one nor more than five years.'' And under this statute we are unable to perceive the relevancy of evidence of pregnancy or birth of a child, or how evidence of the facts could furnish any corroboration of the testimony of the prosecuting witness that she was seduced under a promise of marriage. Plainly, if no child was born as a result of the intercourse, or she never became pregnant because thereof, the prosecution could nevertheless be successfully maintained upon evidence, alone, of the act of seduction and the antecedent promise of marriage.

It should, however, here be said that it is essential that the woman seduced should be of chaste character, and, therefore, if her character for virtue is put in issue by the defendant as it may be it might be incumbent on the Commonwealth to introduce evidence in support of it, but nothing more need be said in this case upon this point because no question was made as to the chastity of Miss Hayes. Com. v. Wright, 16 Ky. Law Rep., 251; Berry v. Com., 149 Ky. 398; May v. Com., 164 Ky. 109.

The Commonwealth, however, in making out its case is not confined, strictly, to direct evidence of the promise of marriage and the subsequent seduction, but may offer

in evidence every relevant fact and circumstance tending in support of the prosecuting witness to show that there was a promise of marriage and seduction as a result thereof. For example the Commonwealth may put in evidence the social and friendly relations between the parties; the length of their acquaintance; the opportunities they had for illicit intercourse; letters that passed between them; presents that were given by one to the other; and other acts and conduct conducing to show the intimacy between them, and the state of feeling each had for the other. And the defendant may likewise introduce in his behalf every relevant fact and circumstance that tends to support his theory that there was no promise of marriage or seduction induced thereby or his defense that the woman was not ·chaste, if this issue is put into the case.

We may further add that in prosecutions under this statute it is indispensable to a conviction that the seduction or intercourse should follow and be accomplished as the result of a promise of marriage on the part of the man because if the woman yields to the influences of the man, not by reason of a promise of marriage on his part, but simply for the gratification· of her passion, no offense is committed under the statute. As said in Putnam v. State, 29 Texas App. 454, 25 Am. St. Rep. 738: "The offense is committed if the man has carnal intercourse to which the woman assented, if such assent was obtained by a promise of marriage made by the man at the time, and to which, without such promise, she would not have yielded. The offense consists in enticing a woman from the path of virtue, and obtaining her consent to the illicit intercourse by promise made at the time . . . . The promise, and yielding her virtue in consequence thereof, is the gist of the offense. If she resists, but finally assents or yields, induced thereto or in reliance upon the promise made, the offense is committed." To the same effect are People v. DeFore, 64 Mich. 693, 8 Am. St. Rep. 863; Hamilton v. United States, 41 App. D. C., 359, 51 L. R. A. (N. S.) 809; Bishop's Statutory Crimes, Sec. 625.

We are, therefore, of the opinion that it is not competent, in prosecutions under this statute, to admit evidence of pregnancy or the birth of a child, and it was manifestly prejudicial error to permit the Commonwealth to exhibit before the jury a child as young as this one was,

for no other purpose than to excite the sympathy of the jury for Agnes Hayes and the child, and to arouse their prejudice against the reputed father, Schofield Jordan. There is no claim made, nor could there well be, of any resemblance between the child and Jordan; its features were too immature to form the basis of an opinion pointing to any resemblance between the baby and the man. But even if the child had reached an age where there might be some resemblance between it and Jordan, we yet think its exhibition would have been error, because, as we have said, it did not throw any light on the questions at issue.

We do not, however, rule that if a child is born as the result of the alleged seduction, the prosecuting witness may not have with her, in the court room in the presence of the jury, the child, although its presence unexplained or uncommented on might create in the minds of the jurors an unfavorable sentiment against the accused, but the probability that the appearance of the child might create such a feeling is not, we think, sufficient to justify us in holding that the mother may not have it with her in the court room. But she cannot be inquired of about its parentage, nor should the Commonwealth's attorney be permitted to allude in any manner to its presence or make any comments on its appearance. State v. Fogg, 206 Mo. 696; State v. Carter, 8 Wash. 272.

During the argument of the attorney for the Commonwealth, the record shows that the following took place: "Hon. John W. Waugh in his speech to the jury turning and taking the baby from its mother, to which the defendant objected. The court overruled the objection and the defendant excepted. Look here, gentlemen of the jury, look here; the most innocent thing that God ever created. Look at this little head, the very imprint of its father; could he deny it; he doesn't. What effect is this going to have upon this innocent babe? It will be turned into the world without a name; this makes no impression on him, he doesn't care; this innocent babe and the mother who must always go through life with the finger of scorn pointed at her; think of this little child when she is old enough to go to school and she grown up, you know what they will say, a bastard; a child without a name; and there sits its father, unconcerned, its father, he don't deny it, and refuses to lift a finger to

rectify the wrong he has done. He makes no attempt to save his own, he says he did not promise to marry her. The defendant entered a motion to exclude the above from the jury: the court overruled the motion to which the defendant excepted."

Keeping in mind that the exhibition of the baby to the jury was incompetent, it is not open to doubt that the conduct of the attorney for the Commonwealth, as disclosed in the extract from the record quoted, was extremely prejudicial to the rights of the accused. The conduct of the attorney for the Commonwealth, in taking the baby from its mother's arm and holding it in his own while making the argument referred to, was plainly designed by him to influence the passions of the jury against the accused, and we can scarcely think of anything that a prosecuting attorney, in his closing argument to the jury could do or say that would be more likely to accomplish this purpose.

We have reversed more than one case because of improper argument of the attorney for the Commonwealth, when the argument was not based on incompetent evidence, and when such an argument as was made in this case finds its support in incompetent evidence, and is accompanied by the acts described in the record, we do not feel disposed to pass it by as harmless error. The evidence although sufficient, as we have said, to sustain a conviction, was of such a conflicting nature as that a jury might have returned a verdict of acquittal without subjecting themselves to criticism for disregarding the evidence, and it is entirely probable that under the influence of the impassioned as well as improper closing argument of the Commonwealth's attorney they were induced to find the defendant guilty, when, except for this, such a verdict might not have been reached.

Wherefore, judgment is reversed for a new trial not inconsistent with this opinion.