**Harry Curtis ROMANS, Jr., Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

Supreme Court of Kentucky.

Feb. 18, 1977.

Paul G. Tobin, Jefferson Dist. Public Defender, Scott T. Wendelsdorf, Asst. Dist. Defender, Louisville, for appellant.

Robert F. Stephens, Atty. Gen., Guy C. Shearer, Asst. Atty. Gen., Frankfort, for appellee.

PALMORE, Justice.

By separate indictments Harry Curtis Romans, Jr., was charged with the forcible rape of Lois Jean McClellan on November 24, 1974, and of Doris June Burnett on December 7, 1974. KRS 435.090 (now superseded by the Kentucky Penal Code). Following a denial of his motion for separate trials the two charges were tried together and he was found guilty and sentenced to life imprisonment on each. In this appeal he claims several prejudicial errors.

Romans admitted having had intercourse with Lois McClellan but denied that it was without her consent. His version was that he paid her $25 for the favor. The act took place in the parking lot of a hospital and was interrupted by the approach of a uniformed security guard. Both parties took the guard to be a policeman, whereupon Lois jumped out of the appellant's car and he drove off. In the course of scrambling away from the automobile Lois fell down and knocked herself out. On cross-examination during the trial she admitted having been previously convicted of soliciting prostitution.

It was not denied that Doris Burnett was raped. Romans simply denied that he was the guilty party or that he had any knowledge of the incident. Doris first identified his photograph from a book at police headquarters and again identified him in a lineup and in the course of her trial testimony. Over objection, the Commonwealth was permitted to show that as a result of the rape she had conceived and borne a child.

On direct examination Romans disclosed that he had served time in the penitentiary for uttering a forged check or checks. At the conclusion of his testimony the court denied his motion that the jury be admonished to consider this information only insofar as it affected his credibility as a witness. In *Shockley v. Commonwealth*, Ky., 415 S.W.2d 866, 872 (1967), a divided court held that a defendant who voluntarily introduced evidence of his own prior conviction of a felony was not "absolutely" entitled to a limiting admonition. Since that time, however, the principles applicable to the reception of prior felony convictions were reconsidered and restated in *Cotton v. Commonwealth*, Ky., 454 S.W.2d 698 (1970), wherein it was made clear that the fact of such a conviction should never be considered by the jury as substantive evidence tending to enhance the likelihood of his being guilty of the charge or charges presently being tried, and that the only way to protect against its being so considered is to admonish the jury to that effect. Unless he waives it by failing to request it, the defendant is entitled to the admonition and a failure to give it is reversible error. To the extent that it holds otherwise, *Shockley* may be considered as overruled.

It was prejudicial error also to allow proof that as a result of the rape upon her Doris Burnett had conceived and given birth to a child. No one questioned the fact that she had been raped. The question being tried was whether Romans was the guilty party. That pregnancy ensued from it was utterly irrelevant and obviously calculated to incite the jury, a plain case of reckless overkill. Cf. *Jordan v. Common-*

*wealth*, 180 Ky. 379, 202 S.W. 896, 898 (1918).

During the course of the trial the Commonwealth was permitted over objection to elicit from a police detective, and also from the defendant himself on cross-examination, that when he was arrested and interrogated and after he had received the Miranda warnings Romans did not come forth with the explanation or story upon which he ultimately relied for his defense, which was that Lois McClellan had prostituted her services to him. This was the most egregious error committed in the trial and, as in the instance of the other two errors we have already mentioned, it was compounded by the prosecuting attorney in his closing remarks to the jury. Rarely does such a proliferation of indefensible blundering crop out in a single trial. The point is so clear that it needs no further discussion. See *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Niemeyer v. Commonwealth*, Ky., 533 S.W.2d 218 (1976).

Some time before the trial counsel for the appellant moved pursuant to RCr 7.24 for the production, among other things, of representative samples of any physical substances taken for testing purposes from the bodies of Lois McClellan and Doris Burnett. The Commonwealth responded in writing that it had none. However, it developed during the trial that hair samples, blood and saliva samples, and vaginal smears had been taken from both women and analyzed at the state police laboratory. The evidence did nothing to help or hurt the appellant, but he moved for a dismissal and contends now that he was deprived of due process of law in that the samples in question could very well have provided exculpatory evidence.

The samples taken from Lois McClellan, of course, were immaterial, since Romans admitted having had intercourse with her. Those taken from Doris Burnett could possibly have contained evidence that he was not the culprit. It was stipulated, however, that the swabbings of spermatozoa from her vaginal cavity "were insuffi-

cient to classify into blood types and that all other items of real evidence were inconclusive." The record does not indicate whether court or counsel ventured an inquiry into whether any of the material was still available or, for instance, whether the samples of pubic hair taken from Doris Burnett contained any hair other than her own. When something like this happens during a trial we think counsel for the aggrieved party must exhaust all reasonably available means to have the error rectified (including, for example, a motion that the trial be recessed until the facts can be ascertained) before he can be in a position to demand a mistrial. If and when the case is retried, the appellant will have an opportunity to explore and explicate the possibility that he was really prejudiced. At this stage, however, we do not perceive enough possibility of it to say that he has been deprived of due process.

■ The last question pertinent to future proceedings in the case is whether the appellant is entitled to separate trials on the two rape charges. RCr 9.16 requires separate trials if it appears that the defendant will be prejudiced by a joinder. "Prejudice" is a relative term. In the context of a criminal proceeding it can mean only that which is unnecessarily or unreasonably hurtful. It has been observed, for example, that a defendant already is "prejudiced" by having been indicted and by having to stand trial. *Ware v. Commonwealth*, Ky., 534 S.W.2d 174, 176 (1976). Unfortunately, however, that particular prejudice is unavoidable. It is not always and inevitably prejudicial, in the legal or relative sense of the word, that two separate and unrelated charges of forcible rape against the same defendant be tried together. See, for example, *Edwards v. Commonwealth*, Ky., 500 S.W.2d 396 (1973).

■ As the charges brought in this case must be retried anyway, we need not decide whether, with the facts placed before him in support of the motion for separate trials, the trial court did or did not err in denying the motion. However, a post-factum review of the evidence makes it clear that the two charges ought not to be tried together for this reason: In the McClellan case appellant admitted the act of intercourse but claimed it was by consent. That the prosecuting witness had been previously involved in prostitution lent some degree of credence to his defense. It was a matter of his word against hers. In the other case it is undisputed that Miss Burnett was forcibly raped, but he denied being the guilty party. If the jury was convinced that the appellant did in fact rape Miss Burnett, it would for that reason be less inclined to doubt that he did the same thing in the McClellan case. Stated another way, the evidence in the Burnett case was calculated to and most probably did diminish the credibility of his testimony in the McClellan case. We recognize that to some degree the same will always be true when proof of separate crimes is allowed in a single trial. Where to draw the line depends on the facts of the individual case. In this one it is our judgment that the trials should be separate.

The judgment is reversed with directions that the appellant be granted a new trial under each of the indictments.

All concur.