Lee PENNINGTON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Oct. 27, 1978.

As Modified Nov. 17, 1978.

Rehearing Denied Jan. 5, 1979.

Discretionary Review Denied March 13, 1979.

**20**

Howell W. Vincent, Covington, for appellant.

Robert F. Stephens, Atty. Gen., James L. Dickinson, Asst. Atty. Gen., Frankfort, Paul E. Hieronymus, Commonwealth's Atty., 41st Judicial District, McKee, for appellee.

Before MARTIN, C. J., and HOWERTON and LESTER, JJ.

LESTER, Judge.

Appellant was convicted of manslaughter in the first degree in violation of KRS 507.030 and sentenced to ten years in the custody of the Kentucky Department of Corrections.

Bad feelings had existed between Lee Pennington and the decedent, Cova Nantz, for some time prior to November 17, 1976. Appellant, a seventy-four year old man, had been advised by various people that Nantz, a much younger person of thirty-five years, had threatened physical violence to Pennington. On the last mentioned date while appellant and his son were traveling to the former's house on Greasy Creek in Leslie County, Nantz followed their pickup truck, and according to Pennington's son, the decedent bumped their vehicle on one or more occasions. The two men stopped the truck in front of appellant's house while Nantz pulled ahead of them and to the side of the road a short distance away. Pennington got out of the pickup and the victim alighted from his car and started in the direction of appellant during which time Nantz made general threats and called Pennington names. Appellant testified that he was fearful of the younger man whom he thought to be drunk. As Nantz approached appellant, the latter claims he observed a pistol or what appeared to be a weapon on the decedent and professing to be in fear of his life, Pennington fired what he considered a warning shot, but unfortunately, the bullet killed Nantz instantly.

The trial was held in mid-July of 1977 in an atmosphere, as the record discloses, of what was less than ideal conditions. Besides the noise of the air conditioners, the trial judge had to threaten the spectators with jail commitment if they did not maintain silence. It was this situation that

caused the court reporter to qualify her certificate that she was unable to record the testimony in its entirety which resulted in two assignments of error to the effect that appellant was deprived of a complete trial record and his right to be heard in his own defense. We have closely examined the transcript and we find that at but nine points was the transcriber unable to record all the testimony, with three of these being but a single word and the remainder only short phrases or a word or two. At no time was the meaning of what the witnesses had to say lost or distorted, and if any error there might have been, we conclude it was harmless. Suffice it to say that if omissions in a transcript are to be relied upon on appeal then it is necessary in both civil and criminal proceedings to furnish a narrative statement in order for the reviewing court to determine whether the aggrieved party has been prejudiced. CR 75.13; *National Dairy Products Corp. v. Rittle*, Ky., 487 S.W.2d 894 (1972); *Roach v. Commonwealth*, Ky., 510 S.W.2d 13 (1974).

Of greater significance are appellant's two issues revolving around the report of a chemical analysis of the alcoholic content of decedent's blood.

Appellee was fully aware of the theory of appellant's defense because prior to the opening statements, the Commonwealth Attorney stated:

I understand the defense will be self-defense.

During the first morning of trial, the prosecution called as a witness Kentucky State Police Officer Clyde Caudill who was the first law enforcement agent upon the scene of the shooting. During his testimony, the trooper described how he observed the scene of the incident and the removal of a sheet from around the body of the victim at the funeral home. It was through this witness that many exhibits were introduced such as a diagram of the scene, the appellant's gun, the statement made by Pennington and pictures of the decedent and appellant's truck. At no time during his testimony did Officer Caudill ever mention that he had caused the funeral director to withdraw a blood sample from the body of Nantz for the purpose of having it analyzed. At no time did the policeman testify that a laboratory had made an analysis of the blood and that a report had been sent to him indicating that the alcoholic content had been .18, which far exceeds the statutory presumption of drunkenness. Furthermore, the county coroner made no mention of the sample taken.

At the conclusion of Caudill's testimony, the court recessed for lunch, and it was during the noon hour that appellant's counsel learned of the existence of the laboratory report. He immediately requested a hearing in camera which we set forth as it transpired:

IN CHAMBERS: The attorneys and the Court have a discussion in chambers on questioning of the Trooper about the blood alcohol test.

MR. HIERONYMUS: I object to attempting to prove that.

MR. VINCENT: I want to find out who made it.

TROOPER CAUDILL: Taken by Dwayne Walker and handed to me which I picked up and sent to Frankfort and it was mailed back to me.

BY THE COURT: Can't you admit he was drinking.

MR. HIERONYMOUS: I will not admit anything.

MR. VINCENT: The defendant moves the Court for leave to introduce the record made from the Central Laboratory at Frankfort, Kentucky, signed by Judy A. Sweeney on the 1st day of December, 1976, as being the results of an alcohol breathilizer test showing that the alcoholic content of Cova Nantz's blood at the time of his death was .18, said test being made from the remains and handed to State Trooper Clyde Caudill by the undertaker, Dwayne Walker and sent to Frankfort by Trooper Caudill and mailed back to him which he then in turn gave back to Dwayne Walker, is that what you said?

TROOPER CAUDILL: I put that in my file; they don't sent the sample back; they just give a report.

MR. VINCENT: I move the Court to allow me to introduce this.

MR. HIERONYMUS: In response to the defendant's motion to (a) introduce a photocopy of blood analysis report and/or wants to make the Commonwealth state that the blood analysis report is written heresay (sic), that it is was apparently prepared by one Judy A. Sweeney, who had the defendant pursuant to the Kentucky Rules of Criminal Procedure requested the results of the tests, the defendant would have been aware of this long ago and could have had Mrs. Sweeney here as a witness had they so desired, but they wait until the Commonwealth closes to make such a motion to delay and continue the case at this time.

BY THE COURT: The Court does not know whether or not the instrument in question is an authentic one or not. It is not confirmed by any official to be a true copy of anything.

MR. VINCENT: I hand you Exhibit 3 and ask you to tell the Court and jury what that is?

TROOPER CAUDILL: This is a result of a blodo (sic) alcohol control test sent to me from Frankfort, by Judy A. Sweeney.

MR. VINCENT: Did you receive that in the course, usual course of business?

A. Yes, I did.

Q. Where was that mailed to you from?

A. State Police lab in Frankfort.

Q. You mailed it to them yourself?

A. Yes.

MR. VINCENT: This is what you got back in response?

A. Yes.

Q. Where did you get the specimen sent to Frankfort?

A. From coroner, Dwayne Walker.

Q. He is the undertaker here?

A. Yes.

Q. He is the one who handled the body of Cova Nantz?

A. Yes.

Q. He handed you these for the sole purpose . . .

A. Upon my request.

Q. You requested it?

A. Yes.

Q. This is part of your official record in yoru (sic) investigation of this case?

A. Yes sir, that is part of my record from my investigation.

Q. That is part of the original record in this case?

A. Yes.

Q. I believe your name appears here, Trooper Clyde Caudill, Post 13?

A. Yes sir.

Q. What is that laboratory number?

A. No.

Q. The case is numbered?

A. Yes.

MR. HIERONYMUS: I, would it be the same if that showed 0000 and I attempted to introduce it, I shudder to think what Mr. Vincent would say.

BY THE COURT: It is not an authentic record and nothing to show it is.

MR. HIERONYMUS: It is written heresay (sic).

BY THE COURT: It is just a photo copy.

MR. VINCENT: I move that you continue this case and allow me a reasonable opportunity to subpeano (sic) the analysist (sic) that made this analysis so I can prove the alcoholic content of the blood of Cova Nantz at the time of the shooting. It is quite material to our defense and I think justice would be denyed (sic) if you overrule the motion.

MR. HIERONYMUS: Mr. Vincent had a right of doing that under the Kentucky Criminal Procedure.

BY THE COURT: I overrule it.

MR. VINCENT: I just found out about it ten minutes ago.

BY THE COURT: Overruled.

■ The appellee admits that *Brady v. Maryland*, 373 U.S. 83, 104, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215 (1963), which states,

[w]e now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process

where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution, supports appellant's position that since he failed to avail himself of the provisions of RCr 7.24(1), in that he made no motion to inspect the copy of the report under discovery procedures, he should not prevail in this issue on appeal. We disagree.

The record demonstrates that within ten minutes of learning about the report Pennington's lawyer asked leave to introduce it, or in the alternative, for a continuance in order to have the chemist appear and testify as to its contents. Defense counsel cannot be charged with failure to comply with RCr 7.24(1), for he made his motion as soon as he gained knowledge of the existence of the report. From the record before us, it is abundantly clear that appellee had no intention of making a voluntary disclosure of the document.

We not only agree with appellee when it says that *Brady, supra; United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Timmons v. Commonwealth*, Ky., 555 S.W.2d 234 (1977); and *Poteet v. Commonwealth*, Ky., 556 S.W.2d 893 (1977), "appear to support the appellant's position," but we go further and find that those cases *do* support appellant's position. The laboratory report contained potentially exculpatory evidence, which should have been before the jury. The appellant was entitled to a continuance in order to subpoena the chemist and to insure the proper introduction of the report.

We note that the jury was at first unable to reach a verdict and this denotes that some doubts existed in its collective mind, and in such cases the test of materiality of the omitted evidence is found in *United States v. Agurs, supra*. Applying those standards, we hold that a constitutional error has been committed and reversal is required.

Much is said by way of brief that the report in question was not an authenticated or certified copy of the original and thus was improper as an exhibit. We are fully cognizant with the principle that the designated custodian of records is the proper vehicle to employ to introduce documentary evidence, *Buckler v. Commonwealth*, Ky., 541 S.W.2d 935 (1976), but when defense counsel discovers exculpatory matter necessary to his case that has not been disclosed to him or otherwise secreted he must exhaust all reasonably available means to have the error rectified, and in two recent opinions, the Supreme Court has provided the example of requesting that the trial be recessed until the facts can be ascertained. *Timmons, supra* and *Romans v. Commonwealth*, Ky., 547 S.W.2d 128 (1977). *Romans* dealt with a state police laboratory report which the prosecution denied in writing that it had.

Recalling that appellant requested an opportunity to subpoena the chemist as soon as he learned of the report and noting that Hyden, the place of trial, and Frankfort are connected by interstate highways and a new toll roll, we are unable to perceive why a recess was not granted and Pennington given a reasonably short time to get his witness.

At the beginning of the trial, the Commonwealth requested invocation of the rule calling for the separation of witnesses. The court complied. Upon rebuttal, the appellee called one Pearl Nantz to testify and upon doing so, announced that the individual had been in the courtroom. Appellant objected to the testimony, which objection was overruled. It would be better practice not to call such a witness, but the matter of whether or not to exclude the witness's testimony, when called, was within the sound discretion of the trial court. *Ragland v. Commonwealth*, Ky., 421 S.W.2d 79 (1967).

Although some of the errors appearing in this record standing alone would be insufficient upon which to base a reversal, nevertheless, when we review the cumulative effect of the mechanical noise in the courtroom, the inability of the court reporter and the jury to hear all of the testimony, the refusal to grant leave to introduce the laboratory report, the denial of a recess to sub-

**24**

poena the chemist, the voice level of the spectators and the failure to uphold the rule regarding separation of witnesses after the invocation, all clearly demonstrate that appellant was denied a fair trial.

The judgment is reversed for a new trial.

All concur.