RENDERED: JUNE 13, 2019
NOT TO BE PUBLISHED

**Supreme Court of Kentucky**

2017-SC-000401-MR

FINAL

DATE 7/5/19 _Kim Redmon, DC_

ALFIE COMPTON          APPELLANT

|  | ON APPEAL FROM KENTON CIRCUIT COURT |
|---|---|
| V. | HONORABLE GREGORY M. BARTLETT, JUDGE |
|  | NO. 16-CR-00498 |

COMMONWEALTH OF KENTUCKY          APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING IN PART, REVERSING AND VACATING IN PART,

## AND REMANDING

A Kenton Circuit Court jury convicted Appellant, Alfie Compton, of five counts: count one, incest (victim under 12 years of age); count two, first-degree sodomy (victim under 12 years of age); count three, first-degree sexual abuse (victim under 12 years of age); count four, first-degree sodomy; and count five, first-degree rape. The jury recommended Compton be sentenced to imprisonment for twenty years for count one, twenty years for count two, five years on count three, ten years on count four, and ten years for count five. The jury recommended the sentences for counts one through four run concurrently, for a total of twenty years, and the sentence for count five to run consecutively to that sentence. In accordance with the jury's recommendation, the trial court sentenced Compton to a total of thirty years' imprisonment. Compton now appeals as a matter of right. Ky. Const. § 110(2)(b).

Compton asserts four claims of error on appeal. He claims that the trial court erred by: (1) failing to provide a unanimous verdict in regard to counts one and two, (2) failing to grant Compton's motion to sever the counts of the indictments, and (3) allowing certain expert testimony. As his fourth alleged error, he argues that the combination of these errors, even if harmless when considered alone, resulted in cumulative error. We hold that the trial court violated Compton's right to a unanimous verdict but did not err otherwise. Therefore, we affirm Compton's convictions and corresponding sentences for count three, first-degree sexual abuse (victim under 12 years of age); count four, first-degree sodomy; and count five, first-degree rape. However, we reverse his convictions and vacate the corresponding sentences as to count one, incest (victim under 12 years of age), and count two, first-degree sodomy (victim under 12 years of age), as these two convictions violated his right to a unanimous verdict under this Court's precedent. Therefore, we affirm the trial court in part, reverse and vacate in part, and remand this matter to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND

Compton was indicted on June 23, 2016, on five counts. The first four of these counts (incest, two counts of sodomy, and sexual abuse) were for sexual crimes Compton allegedly perpetrated against his minor daughter, Ariana.[1] Ariana testified that she was approximately six or seven years old when the

---

[1] In keeping with this Court's practice, throughout this opinion, the minor victims' names will be changed to protect their anonymity.

acts giving rise to these charges began. Ariana was under the age of twelve at the time of the first three charged criminal acts and over twelve when her father sodomized her the final time.

Count five of Compton's indictment was for the alleged first-degree rape of Bethany, a minor who was Compton's distant relative. Bethany testified that the rape occurred when she was in sixth grade.

Ariana testified that her mother would wake her and place her in the bed with Compton before leaving for work in the mornings. Ariana said this is where the sexual acts occurred. Ariana stated that initially Compton would ask her to rub his chest, and then his stomach. Compton would continue to tell her to go lower until she was touching his penis. This led to Compton forcing his daughter to perform oral sex on him. Ariana also testified that Compton would rub his penis on her vagina. Compton had told her that he could not put his penis in her vagina in case her mother took her to be examined. These acts became a daily routine.

Ariana testified she was scared to tell her mother. She stated several reasons for this fear. The first, she said, was because Compton had taken her to a lake in the park and told her he could tie a rope around her legs with rocks on it and she would sink. Compton made the threat only once, but took her to the park several times. Second, Ariana said that when she told Compton she was going to tell her mother, he replied, "I'll fucking kill you." Compton's employment at the coroner's office also scared Ariana, as she thought he knew how to get rid of bodies.

3

Ariana testified she was around thirteen or fourteen years old the last time a sexual act occurred between her and Compton. This final act of abuse happened at Compton's residence following her parents' divorce. On this occasion, Compton engaged in much the same activity as Ariana testified had happened previously on a daily basis. Specifically, Compton asked Ariana to rub his chest and stomach before asking her to move her hand down lower. Compton rubbed his penis against her vagina, then forced Ariana to perform oral sex on him. She stated that this time he orally manipulated her nipples, then went to the bathroom to ejaculate. She testified that she told Compton she knew these acts were wrong.

Ariana was around fourteen or fifteen years old when she told her mother of the sexual abuse Compton had perpetrated against her for almost a decade. Ariana stated that she had been at Compton's house when she and Compton got into a physical altercation. During the altercation, Ariana told Compton that she was going to tell her mother he raped her if he did not get off her. After the altercation, Ariana spent the weekend at her friend's house. Ariana informed her mother that Compton had raped her when her mother picked her up from the friend's house. Her mother contacted the police.

After Ariana reported Compton's abuse to her mother and authorities, Compton's other victim, Bethany, also reported being previously raped by Compton. Bethany stated that she met Compton when she dated his son. She testified that she lived with Compton and his family for a period of time. Eventually, Bethany found out that she was related to Compton. She testified

that she was in the sixth grade when Compton subjected her to the initial sexual act.

On the day of the charged act, Bethany was at Compton's residence along with Compton, Ariana, and Ariana's brother (Bethany's boyfriend). Compton took Bethany upstairs to the bathroom, telling Ariana and Ariana's brother, who were sitting in the living room, that he was taking Bethany upstairs to discuss her dad. Once in the bathroom, Compton took Bethany's jeans and underwear off, and then removed his pants. Bethany testified that Compton put her legs up on his shoulders and had sexual intercourse with her. She testified that Compton told her not to tell anyone and reminded her that he worked at the coroner's office. She said that she was afraid of Compton.

Bethany testified that Compton had sexual intercourse with her multiple times. She said that each time, she feared Compton due to his place of employment and the fact that he owned firearms. Further, like Ariana, Bethany stated Compton had shown her a lake in the park and she feared he would get revenge if she told anyone he raped her.

## II. ANALYSIS

### A. Unanimous Verdict

Compton preserved this issue by objecting at trial. He argues that the jury instructions pertaining to count one, incest (victim under 12 years of age) and count two, first-degree sodomy (victim under 12 years of age) lacked specificity, denying him of his right to a unanimous verdict pursuant to Section

5

7 of the Kentucky Constitution. The Commonwealth concedes that under current case law, these instructions violate the requirement of a unanimous verdict.

During a bench conference, Compton specifically objected to the trial court giving jury instructions five and six. Those instructions related to counts one and two—incest and sodomy—both with Ariana when she was under 12 years of age. Compton complained the instructions failed to specify the particular acts on which they were based out of the plethora of sexual abuse allegations presented at trial.

Following Compton's argument that the instructions violated his right to a unanimous verdict, an Assistant Commonwealth's Attorney first offered to add detail to the instructions. However, in the same bench conference, the Commonwealth responded to the requested changes, stating that the requested level of detail was unnecessary. Compton's counsel rebutted the Commonwealth's contention and cited relevant case law, *Martin v. Commonwealth*, 456 S.W.3d 1 (Ky. 2015), arguing that "under that instruction we cannot ensure that the jury is reaching a unanimous verdict on the particular incident that they are finding him guilty of."

After this argument, the judge asked the Commonwealth if the jury instructions contained the date and place of the alleged crimes. Throughout the bench conference, Compton's counsel reiterated that the instructions on appeal before this Court violated Compton's right to a unanimous verdict. Specifically, defense counsel argued:

Defense: [the jury] still need[s] to agree that it happened on a particular occasion. If we do not add the specificity of a particular occasion, then it violates [Compton's] right to a unanimous verdict.

Trial court: a particular occasion, when you're talking a span of years, your question is if [the jury] is satisfied that it happened at least once within this time frame.

Defense: Your honor, I would disagree that's what they have to decide. They must agree it happened on one particular occasion. However, we can distinguish it—it needs to be distinguished.

This Court has long held that "Section 7 of the Kentucky Constitution requires a unanimous verdict reached by a jury of twelve persons in all criminal cases." *Wells v. Commonwealth*, 561 S.W.2d 85, 87 (Ky. 1978); *see also Coomer v. Commonwealth*, 238 S.W.2d 161 (1951); *Cannon v. Commonwealth*, 163 S.W.2d 15 (1942).

The jury instruction pertaining to incest (victim under 12 years of age) reads:

You will find the Defendant guilty of Incest under this Instruction and under Count I of the Indictment if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this County on or between December 30, 2006 through December 30, 2012, and before the finding of the Indictment herein, he engaged in deviate sexual intercourse with [Ariana] on one occasion by placing his penis inside her mouth at 114 Pike Street, Bromley, Kentucky;

B. That [Ariana] was his biological daughter;

AND

C. That he knew [Ariana] was his biological daughter;

AND

D. That at the time of such intercourse, [Ariana] was less than 12 years of age.

7

The jury instruction pertaining first-degree sodomy (victim under 12 years of age) reads:

> You will find the Defendant guilty of First Degree Sodomy under this Instruction and under Count II of the Indictment if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> > A. That in this County on or between December 30, 2006 through December 30, 2012, and before the finding of the Indictment herein, he engaged in deviate sexual intercourse with [Ariana] on one occasion by placing his penis inside her mouth at 114 Pike Street, Bromley, Kentucky;
> >
> > AND
> >
> > B. That at the time of such intercourse, [Ariana] was less than 12 years of age.

Compton argues, and we agree, that under this Court's current precedent the tendered jury instructions present a unanimous verdict issue. Ariana testified that Compton consistently committed the acts giving rise to the charges. Therefore, count one incest (victim under 12 years of age) and count two first-degree sodomy (victim under 12 years of age) were based upon multiple, separate acts of sexual abuse not distinguished from one another in any way by the jury instructions.

This Court addressed this issue in *Johnson v. Commonwealth*, 405 S.W.3d 439 (Ky. 2013). *See also Martin v. Commonwealth*, 456 S.W.3d 1 (Ky. 2015). In *Johnson*, the jury was instructed on first-degree criminal abuse.

> The instructions provided that the jury shall find Johnson guilty on or about and between the dates of August 28, 2009 and October 23, 2009 she intentionally abused the victim; caused serious physical injury to the victim; the victim was at that time 12 years of age or less; and the abuse inflicted was other than the

8

fatal injury to the victim's abdomen that occurred on or about October 23, 2009.

*Id.* at 448. Similar to the case at hand, the evidence presented in *Johnson* showed proof of two injuries that could satisfy this instruction. The *Johnson* court held "that such a scenario—a general jury verdict based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based on the proof—violates the requirement of a unanimous verdict." *Id.* at 449.

Here, Ariana's testimony revealed that the sexual acts committed by Compton occurred more than once. As mentioned above, the jury instructions provided that the jury find Compton guilty if they believed he committed the acts of incest and first-degree sodomy on *any* one occasion within a six-year time frame.

After a review of Ariana's testimony and the tendered jury instructions, it is impossible to determine if all twelve jurors agreed upon the particular set of criminal acts for which Compton was convicted. The jury instructions did not require the jury to differentiate which of the instances was the basis of the conviction, as required by *Johnson.* *Id.*

Further, *Johnson* held:

> The unanimity requirement mandates that jurors end up in the same place. When we give the kind of instruction in this case to juries, they are forced by its language to *appear* to end up in the same place in order to convict. But that appearance is illusory because we can never know whether the jurors are indeed in the same place. Such instructions make it possible that some of the jurors may vote for the first crime, and some may vote for the second, with all agreeing that the defendant committed a crime.

9

(Emphasis added). *Id.* at 455.

As discussed above, it is impossible to determine from the proof, the jury instructions, and the verdict forms on which particular criminal act the jury based its conviction. For that reason, the error in this case requires reversal of count one, incest (victim under 12 years of age), and count two, first-degree sodomy (victim under 12 years of age) convictions. We also vacate the sentences which correspond to these convictions.

## B. Failure to Sever

Compton argues that the trial court abused its discretion by denying his motion to sever the charges related to Ariana from that related to Bethany. He contends that he suffered actual prejudice as a result of this error when the trial court held a single trial based on charges for both minors. He argues that this error violates his Fifth and Fourteenth Amendment rights under the United States Constitution, as the joinder of the allegations denied his right to a fair trial. Further, he states that the factual allegations in the motions that argued for joinder were not sufficient to find that his acts amounted to signature crimes, as they were not distinctive enough. We are not persuaded by these arguments.

This Court held in *Garrett v. Commonwealth*:

The interaction of RCr 9.12 and RCr 6.18 allows the charges brought in separate indictments to be joined for trial only when the offenses are "of the same or similar character" or are "based on the same acts or transactions connected together or constituting parts of a common scheme or plan." When the conditions set forth in RCr 6.18 and RCr 9.12 are present, the trial judge has broad discretion to allow the joinder of offenses charged in separate

10

indictments. We review such decisions for abuse of discretion. Nevertheless, to be reversible, an erroneous joinder of offenses must be accompanied by "a showing of prejudice" to the defendant. This showing of prejudice cannot be based on mere speculation, but must be supported by the record.

534 S.W.3d 217, 223 (Ky. 2017). The *Garrett* Court further held "a significant factor in identifying prejudice from joining offenses for a single trial is the extent to which evidence of one offense would be inadmissible in the trial of the other offense." *Id.* citing *Hammond v. Commonwealth*, 366 S.W.3d 425, 428-29 (Ky. 2012). While *Garrett* dealt with the joinder of separate indictments, the analysis is the same pertaining to severance of charges brought in the same indictment, as was the case herein.

Also, *Garrett* cited this Court's precedent stating:

Offenses closely related in character, circumstance[,] and time need not be severed. If evidence from one of the offenses joined in the indictment would be admissible in a separate trial of the other offenses, the joinder of offenses generally will not be prejudicial. Additionally, considerations of judicial economy and the efficiency of avoiding multiple trials are reasons for joint trials.

*Garrett*, 534 S.W.3d at 223; *citing Cohron v. Commonwealth*, 306 S.W.3d 489, 493-94 (Ky. 2010); *see also Peacher v. Commonwealth*, 391 S.W.3d 821, 836 (Ky. 2013).

We will examine the relevant Kentucky Rules of Criminal Procedure. RCr 6.18 reads:

Two (2) or more offenses may be charged in the same complaint or two (2) or more offenses whether felonies or misdemeanors, or both, may be charged in the same indictment or information in a separate count for each offense, if the offenses are of the same or similar character or are based on the same acts or transactions

11

connected together or constituting parts of a common scheme or plan.

Regarding separate trials, RCr 8.31 reads:

If it appears that a defendant or the Commonwealth is or will be prejudiced by a joinder of offenses or of defendants in an indictment, information, complaint or uniform citation or by joinder for trial, the court shall order separate trials of counts, grant separate trials of defendants or provide whatever other relief justice requires. A motion for such relief must be made before the jury is sworn or, if there is no jury, before any evidence is received. No reference to the motion shall be made during the trial. In ruling on a motion by a defendant for severance the court may order the attorney for the Commonwealth to deliver to the court for inspection in camera any statements or confessions made by the defendants that the Commonwealth intends to introduce in evidence at the trial.

RCr 9.12 reads:

The court may order two (2) or more indictments, informations, complaints or uniform citations to be tried together if the offenses, and the defendants, if more than one (1), could have been joined in a single indictment, information, complaint or uniform citation. The procedure shall be the same as if the prosecution were under a single indictment, information, complaint or uniform citation.

This Court held in *Peacher v. Commonwealth*:

Because a certain degree of prejudice is inherent in the joinder of offenses, as it is in any indictment, this Court has explained that the "prejudice" calling for severance or other relief under RCr 9.16 is "undue prejudice," i.e., prejudice that goes beyond the inherent prejudice to that which is unnecessary and unreasonable. *Romans v. Commonwealth*, 547 S.W.2d 128 (Ky.1977). Although our rule mandates relief when such undue prejudice appears likely, we have entrusted application of the rule to the trial court's discretion, *Debruler*, 231 S.W.3d at 752 and we have many times noted that an erroneous severance ruling does not justify appellate relief unless it resulted in actual prejudice to the party opposing the ruling. *Cohron v. Commonwealth*, 306 S.W.3d 489 (Ky.2010) (citing *Sherley v. Commonwealth*, 889 S.W.2d 794 (Ky.1994)).

391 S.W.3d at 838.

12

Compton filed a motion for separate trials. He moved the court to sever counts one through four (related to Ariana) from count five (related to Bethany). In the Commonwealth's response, it argued that pursuant to RCr 6.18 the offenses were of the same or similar character. Further, the Commonwealth contends that the conduct of each count would be admissible in separate trials under Kentucky Rules of Evidence 404(b) as *modus operandi* and because the evidence was inextricably intertwined.

KRE 404 states:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:

(1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or

(2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

Herein, the counts all occurred at Compton's residence.[2] Furthermore, Ariana was present in the residence during the charged count of rape. The Commonwealth asserts that the trial court did not err in failing to sever the charges due to several factors. Specifically: both Ariana and Bethany testified Compton threatened to kill them after the assaults occurred, both victims were afraid to disclose the assaults because of Compton's employment at the

---

[2] It is notable that count four first-degree sodomy occurred at a different location, however, the location was Compton's residence after he and his wife divorced.

13

coroner's office and his knowledge of how to dispose of a body, Compton had taken both victims to a lake in the park to reinforce both victims' fear that Compton would kill them if they reported the crimes, both assaults involved holding the victim down and using force, the assaults occurred against both victims until their mid-teenage years, Compton communicated with both victims through text messaging, Compton was physically violent during the assaults, Compton's method of gaining access to the victims was when they were at his residence and he could isolate each child into a room by herself, both victims were related to Compton, the indictments had common witnesses, and Bethany reported only after (and on the same day) Ariana reported to the police.

Compton emphasizes the differences between the alleged crimes. He argues that the victims alleged completely different types of sexual crimes, that Compton threatened Ariana explicitly two times, Ariana's testimony did not appear to involve Compton holding her down, and that communicating through text messaging was hardly useful to any analysis of joinder. He argues that there is not a signature crime that would allow the admission of evidence due to *modus operandi.*

As we noted in *Garrett,* "offenses closely related in character, circumstance, and time need not be severed. If evidence from one of the offenses joined in the indictment would be admissible in a separate trial of the other offenses, the joinder of offenses generally will not be prejudicial." 534 S.W.3d at 223. The Commonwealth states that the abuse Compton inflicted on

14

Ariana and Bethany was similar in that the abuse was of a sexual nature, it occurred during an overlapping time period, all the charges arose from sexual abuse perpetrated at Compton's residence, and Ariana was present in the home during one of the acts of abuse inflicted on Bethany. We further emphasize the fact that both girls were scared of Compton due to his place of employment and threats he appears to have made to both regarding disposing of their bodies in a lake.

Therefore, consistent with the holding in *Garrett*, the offenses were closely related in character, circumstance, and time. The trial court did not abuse its discretion by denying Compton's motion for separate trials.

### C. Expert Testimony

Compton argues that the trial court erred by allowing Dr. Jackie Anderson, the doctor who performed a physical examination on Ariana, to testify regarding the results of Ariana's examination.

On appeal, "[w]e will not disturb a trial court's decision to admit evidence absent an abuse of discretion." *Matthews v. Commonwealth*, 163 S.W.3d 11, 19 (Ky. 2005) *citing Partin v. Commonwealth*, 918 S.W.2d 219, 222 (Ky. 1996). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Compton contends that the testimony provided by Dr. Anderson is irrelevant under KRE 401[3] and 402.[4] Dr. Anderson conducted an examination on Ariana about a year and a half after the last act of sexual abuse occurred. Her testimony revealed that Ariana had a normal physical examination and a normal hymen. Further, Dr. Anderson testified that she did not expect to find an injury during the examination.

Compton supports his argument by stating that Ariana did not testify that Compton penetrated her, and the exam was a long time removed from the last sexual encounter. Compton indicates that "[t]he Commonwealth wished to present a doctor to say that there was no injury and she did not expect there to be one." He maintains that the Commonwealth utilized Dr. Anderson's testimony to "paint Ariana's claims in the tone of scientific significance even while offering no relevant evidence."

Here, the evidence may have lacked relevance. However, it is notable that there is a certain relevance for the jurors to be informed of the thoroughness of the investigation conducted. However, it was the only evidence of Ariana's physical examination presented at trial—and the results were normal. There was no testimony that Compton ever penetrated Ariana, so

---

[3] KRE 401 reads: "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

[4] KRE 402 reads: All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the Commonwealth of Kentucky, by Acts of the General Assembly of the Commonwealth of Kentucky, by these rules, or by other rules adopted by the Supreme Court of Kentucky. Evidence which is not relevant is not admissible.

16

a normal examination and findings of an intact hymen appear to lack relevance apart from showing the jury the steps undertaken in investigating the crime. However, even if the admission of this evidence was in error, it certainly did not harm Compton. Rather, it supported Compton's statements that he did not penetrate Ariana. Therefore, even if the admission of this expert evidence was an abuse of discretion as it lacked relevance, any such error would be harmless.

### D. Cumulative Error

We disagree with Compton's contention that the errors present in this case amounted to cumulative error necessitating reversal. We have reversed and remanded on the basis of Compton's first alleged error as to two of the charges for which he was convicted. The other potential error we found was not only harmless, but may have even worked in Compton's favor, as it aligned with his claim that he had not penetrated Ariana. Therefore, Compton's assertion that we should reverse his case in its entirety due to the cumulative nature of the errors herein is wholy without merit.

### III.    CONCLUSION

For the foregoing reasons, we affirm Compton's convictions as to counts three, four, and five for first-degree sexual abuse (victim under 12 years of age), first-degree sodomy, and first-degree rape. We reverse Compton's convictions as to counts one and two for incest (victim under 12 years of age) and first-degree sodomy (victim under 12 years of age), as the jury instructions violated Compton's right to a unanimous jury verdict.    Therefore, we vacate Compton's

17

sentences associated with counts one and two and remand this matter to the trial court for further proceedings in conformity with this opinion.

Minton, C.J.; Hughes and VanMeter, JJ., concur. Buckingham, J., concurs in result only without separate opinion. Keller, J., concurs in part and dissents in part by separate opinion in which Lambert and Wright, JJ., join.

KELLER, J., CONCURRING IN PART AND DISSENTING IN PART: I concur with the majority's holdings regarding severance of the charges and expert testimony, but I dissent from the majority's analysis of the alleged unanimity error. As the majority notes, this Court has repeatedly held "general jury verdicts" to be reversible under similar circumstances. While the Court is bound to such precedent, I believe that precedent stems from an inaccurate reading of our constitutional and statutory requirements for unanimous verdicts.

Prior to this Court's decision in *Johnson v. Commonwealth*, 405 S.W.3d 439 (Ky. 2013), alternative-theory instructions satisfied our unanimity requirement so long as those theories were supported by the evidence.[5] *See Davis v. Commonwealth*, 967 S.W.2d 574 (Ky. 1998); *Harris v. Commonwealth*, 793 S.W.2d 802 (Ky. 1990), *overruled on other grounds* by *St. Clair v. Commonwealth*, 451 S.W.3d 597 (Ky. 2014); *Wells v. Commonwealth*, 561 S.W.2d 85 (Ky. 1978). When the evidence failed to support one or more of those

---

[5] The history of our unanimity decisions is explained in detail in several separate opinions written by the minority of this Court. *See King v. Commonwealth*, 554 S.W.3d 343, 365–77 (Ky. 2018) (Keller, J., concurring in part and dissenting in part).

18

theories, a unanimity issue arose. *See Commonwealth v. Whitmore*, 92 S.W.3d 76 (Ky. 2002); *Burnett v. Commonwealth*, 31 S.W.3d 878 (Ky. 2000) *overruled on other grounds* by *Travis v. Commonwealth*, 327 S.W.3d 456 (Ky. 2010); *Hayes v. Commonwealth*, 625 S.W.2d 583 (Ky. 1981); *Boulder v. Commonwealth*, 619 S.W.2d 615 (Ky. 1980), *overruled on other grounds* by *Dale v. Commonwealth*, 715 S.W.2d 227 (Ky. 1986).

Under this line of cases, the jury instructions in Compton's trial would not present a unanimity issue. Among Compton's charges were one count of incest (victim under 12 years of age) and one count of first-degree sodomy (victim under 12 years of age), both for abuse of his daughter when she was younger than twelve. The instructions identified a specific timeframe, December 2006 through December 2012, and required that the jurors find that the specified criminal conduct occurred on at least one occasion within that time period. The daughter testified to multiple instances occurring within that timeframe that could have satisfied the individual charges. Thus, the alternative theories or means by which Compton committed those crimes was supported by the evidence. Under the case law cited above, there would be no violation of our unanimous verdict requirement.

In *Harp v. Commonwealth*, 266 S.W.3d 813 (Ky. 2008), however, the Court began to refine its view of our unanimity requirement. In that case, the jury instructions provided for one count of sodomy first-degree, one count of indecent exposure, and seven counts of sexual abuse first-degree. The seven sexual abuse instructions were identical and factually indistinguishable, with

19

each providing the same time period (December 2003 to February 2006). Harp argued that the instructions should have been factually distinguishable, and the Court agreed, explaining

> that in a case involving multiple counts of the same offense, a trial court is obliged to include some sort of identifying characteristic in each instruction that will require the jury to determine whether it is satisfied from the evidence the existence of facts proving that each of the separately charged offenses occurred.

*Id.*

Thus, under *Harp*, factually indistinguishable jury instructions in multiple count cases violate our unanimous verdict requirement and constitute reversible error. However, the Court continued to hold that multiple-theory instructions were adequate so long as each theory was supported by the evidence. *See Jones v. Commonwealth*, 331 S.W.3d 249 (Ky. 2011); *Beaumont v. Commonwealth*, 295 S.W.3d 60 (Ky. 2009). The Court followed this approach until *Johnson*, when the Court shifted dramatically from this established view. In that case, the Court addressed a single instruction for one count of a crime when evidence was presented of multiple instances that could individually satisfy the instruction. The defendant had been charged with one count of first-degree criminal abuse. 405 S.W.3d at 448. The instruction on that charge provided a two-month timeline for the commission of the crime, and the evidence indicated two incidents within that time period that could qualify as first-degree criminal abuse. *Id.* The Court held "that such a

20

scenario—a general jury verdict based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based on the proof—violates the requirement of a unanimous verdict." *Id.* at 449. I believe that this holding, which strayed significantly from our prior precedent, violated the principles of our unanimity requirement.

The *Johnson* decision not only contradicts a well-established line of cases, but it clashes with the sound reasoning of other jurisdictions, as well. In those jurisdictions, unanimity is satisfied so long as all jurors agree that each element of the crime was proven beyond a reasonable doubt; they need not agree on the manner in which the crime was committed.[6] In other words, these jurisdictions draw a distinction between evidence of multiple *crimes* and evidence of alternative *means* of committing a crime. Simply put, all jurors must agree that the defendant committed the crime, but they do not need to unanimously agree on a particular set of facts.

Under the current law in Kentucky, however, we require our jurors to unanimously agree on the *facts*. Justice Cunningham's dissent in *Johnson* highlights the absurdity of this rule. He explained, "We are requiring juries to

---

[6] *See State v. Gardner*, 889 N.E.2d 995, 1005 (Ohio 2008) ("Unanimity is not required . . . as to the means by which the crime was committed so long as substantial evidence supports each alternative means."); *State v. Gustafson*, 350 N.W.2d 653, 663 (Wis. 1984) (concluding "that these acts of sexual contact were simply alternative means of committing the *actus reus* element, i.e. the wrongful act of sexual contact, involved in the crime of second-degree sexual assault"); *State v. Ayala-Leyva*, 848 N.W.2d 546, 553–54 (Minn. Ct. App. 2014) ("A jury must unanimously agree that the state has proved each element of an offense. But the jury is not 'always required to agree on alternative ways in which a crime can be committed.'"); *State v. Godoy*, 284 P.3d 410, 413 (N.M. Ct. App. 2012) ("[J]ury unanimity is required only as to the verdict, not to any particular theory of guilt.").

21

be unanimous on matters that the unanimous verdict requirement never anticipated." *Id.* at 461. In fact, prior to *Johnson,* nothing in our case law—or the Kentucky Constitution—required unanimity on the *facts* to achieve due process. Rather, our constitution requires only unanimity of the *verdict.* I would therefore encourage the Court to overrule *Johnson.*

If the Court declines to overrule this line of cases, it should at least look to other jurisdictions' analysis of this same issue. In most of those jurisdictions, prosecutors can either choose which particular incident the jury will consider or give a generalized unanimity instruction. In addition, many jurisdictions reject a bright line rule that a unanimity error requires reversal; instead, those jurisdictions consider whether the error prejudiced the defendant's right to a fair trial under the circumstances of that particular case. Adoption of a similar approach in the Commonwealth could prove helpful to the bench and bar.

For the foregoing reasons, I would affirm the convictions for incest (victim under 12 years of age) and first-degree sodomy (victim under 12 years of age).

Lambert and Wright, JJ., join.

COUNSEL FOR APPELLANT:

Robert Chung-Hua Yang
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

William Robert Long Jr.
Assistant Attorney General